LOIS DADDONA, ADMINISTRATRIX (ESTATE OF ISABEL KEIPER) *v.* LIBERTY MOBILE HOME SALES, INC.
(13467)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued October 6—decision released November 29, 1988

*Robert L. Hirtle, Jr.,* with whom was *Richard M. Porter,* for the appellant (defendant).

*Edward G. Fitzpatrick,* with whom, on the brief, was *Peter E. Mariano,* for the appellee (plaintiff).

*Joseph I. Lieberman,* attorney general, and *Stephen R. Park, William M. Rubenstein* and *Robert M. Langer,* assistant attorneys general, filed a brief for the state as amicus curiae.

SHEA, J. The plaintiff, Lois Daddona, administratrix of the estate of her mother, Isabel Keiper, owner of a mobile home, brought an action seeking injunctive relief and monetary damages against the defendant, Liberty Mobile Home Sales, Inc., which owns the lot where the home is located. The plaintiff alleged in her amended complaint that the defendant's continuing refusal to permit an on-site sale of the decedent's mobile home violates General Statutes § 21-79;[1] that the

---

[1] "[General Statutes] Sec. 21-79. OWNER PROHIBITED FROM RESTRICTING RESIDENT'S RIGHT TO SELL. (a) No owner or operator of a mobile manufactured home park shall require a resident who owns a mobile manufactured home which is safe, sanitary and in conformance with aesthetic standards to remove the home from the development at the time such

defendant's enforcement of the resale standards set by the 1982 supplemental judgment in an action the

mobile manufactured home is sold or a mortgage on such a home is foreclosed provided that the purchaser or foreclosing mortgagee shall assume and be bound by the rental agreement of the foreclosed mortgagor and shall be bound by the rules and regulations of the park.

"(b) A mobile manufactured home shall be presumed to be safe and sanitary if it is established that the mobile manufactured home was constructed in accordance with any nationally recognized building or construction code or standard. Failure to meet any such standard or the provisions of any such code shall not automatically raise a presumption that the mobile manufactured home is unsafe or unsanitary. Such failure shall not be used as a reason for withholding approval of an on-site sale unless such failure renders the mobile manufactured home unsafe or unsanitary.

"(c) The owner of a mobile manufactured home park shall bear the burden of showing that a mobile manufactured home is unsafe, unsanitary, or fails to meet the aesthetic standards of the development. No aesthetic standard concerning those physical characteristics such as size, original color or original building materials, which cannot be changed without undue financial hardship to the resident, shall be applied against a mobile home.

"(d) Any purchaser of a mobile manufactured home sold by a resident may become a resident of the mobile manufactured home park provided he meets the entry requirements for said park and such requirements are equally applied by the owner to all purchasers and prospective residents and the owner approves such entry. Such approval may not be withheld except for good cause. For the purposes of this section good cause means a reasonable cause for the owner to believe (1) that such purchaser intends to utilize the purchased mobile manufactured home for an illegal or immoral purpose or for any purpose that would disturb the quiet enjoyment of the other residents of the park or (2) that the purchaser is or will be financially unable to pay the rent for the space or lot upon which the purchased mobile manufactured home is located. If the owner denies approval to a purchaser, he shall, in writing, state any reason for such disapproval. Such statement shall be delivered to the resident and the purchaser or prospective resident within ten days after the owner receives the completed application of the purchaser or prospective resident. Failure to deliver such notification within ten days shall be deemed to be approval.

"(e) Any resident wishing to sell his or her home shall request a written statement of the owner's intentions regarding the condition of the home. Within twenty days after receipt of such a request, the owner shall approve the home's condition for resale or deliver a written statement to the resident specifying the reasons why the home is not safe, sanitary, or in conformance with aesthetic standards. Failure of the owner to respond within twenty days shall be deemed to be an approval of the home's condition for resale. If the resident disputes the owner's response, he may seek a declara-

defendant had brought against the town of Prospect constitutes a violation of General Statutes § 21-79 and the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; and that the dismantling of the mobile home by the defendant for off-site storage constitutes a violation of CUTPA.

The trial court rendered judgment for the plaintiff to recover compensatory damages, punitive damages, attorney's fees, and costs. The trial court also permanently enjoined the defendant from interfering with the on-site sale of the mobile home and from evicting the plaintiff, provided that the plaintiff paid the defendant a reasonable sum for use and occupancy each month after the effective date of its decision. In addition, the trial court rendered judgment for the plaintiff on the defendant's counterclaim for unpaid rent, on the ground that, by dismantling the mobile home, the defendant had caused the mobile home to become untenantable, thereby excusing the plaintiff from paying rent pursuant to General Statutes § 47a-4a.

On appeal, the defendant claims that the trial court erred in holding that: (1) General Statutes § 21-79 does not take private property without just compensation; (2) an estate is a "resident" as defined by General Statutes § 21-64 (5);[2] (3) General Statutes § 21-79 takes pri-

tory ruling from the department of consumer protection. The resident may attempt to correct defects identified by the owner and may again request the owner's approval of the home's condition for resale. If the resident again disputes the owner's response, he may once again seek a declaratory ruling from the department. An owner's statement of approval shall remain in force for not more than six months. No owner shall exact a commission or fee with respect to the price realized by the seller, unless he has acted as agent for the seller in a sale pursuant to a written contract, or charge a rent for the mobile manufactured home space or lot upon which the purchased mobile manufactured home is located greater than the prevailing rent for any other space or lot located in the park."

[2] General Statutes § 21-64 (5) provides: " 'Resident' means a person who owns, or rents and occupies, a mobile manufactured home in a mobile manufactured home park."

ority over the lease provision incorporating the 1982 supplemental judgment in an action the defendant had brought against the town of Prospect; (4) the plaintiff did not abandon the mobile home; (5) the defendant's actions constituted violations of CUTPA in three respects; and (6) the defendant was not entitled to recover on its counterclaim for unpaid rent.

At oral argument, the defendant conceded that the first claim is controlled by our holding in *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, 208 Conn. 620, 546 A.2d 805 (1988), that the right of on-site sale given to a mobile home owner by § 21-79 does not constitute an unconstitutional taking of property. The defendant has also acknowledged that the second claim is controlled by our holding in *Thompson* v. *Merlino Enterprises, Inc.*, 208 Conn. 656, 545 A.2d 1094 (1988), that an administrator is a "resident" as defined by § 21-64 (5) and thus may exercise the rights of a deceased owner of a mobile home. We find no error on the third and fourth claims. On the fifth claim we conclude that two of the three grounds relied upon in awarding damages for violations of CUTPA are unsound. On the sixth claim, we conclude that the trial court's finding of fact on which its conclusion was based was clearly erroneous. Accordingly, we remand the case to the trial court with direction to redetermine the issue of damages based upon the remaining ground for finding a CUTPA violation, and to retry the defendant's counterclaim.

The trial court found the following facts. On December 13, 1972, the decedent, Isabel Keiper, purchased a 1973 Burlington mobile home for $10,800. The mobile home was purchased "on-site" upon a lot in Harmony Acres Mobile Home Park, which the defendant owned, in the town of Prospect. The parties entered into a rental agreement, which was renewed annually until September, 1984, when it expired.

An addendum to the plaintiff's lease was executed on September 23, 1983, incorporating the provisions of a 1982 supplemental judgment from a prior action, *Liberty Mobile Home Sales, Inc.* v. *Prospect,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 106145 (September 23, 1982). That judgment provided that, pursuant to the redesign of the park, twenty-six mobile home lots were to be eliminated from the Harmony Acres Mobile Home Park by September 22, 1988. The lot occupied by the plaintiff's mobile home was among those to be eliminated. The judgment required, however, that a new site within the park be offered to each resident whose lot was being eliminated by the plan of development.

No new lease was executed after September, 1984, because the plaintiff's decedent, Keiper, was hospitalized and unable to sign. Keiper died on November 11, 1984. The plaintiff, administratrix of the estate, paid rent to the defendant from December 1, 1984, to July 1, 1985. In November, 1984, after Keiper's death, the defendant advised the plaintiff that the home would have to be removed from the park and sold off-site.

The plaintiff's expert at trial testified that the appraised value of the mobile home in December, 1984, if sold on-site was $28,000. On June 21, 1985, the plaintiff sent a letter to the defendant, giving notice of her intention to sell the mobile home and requesting an inspection. The defendant did not respond to this request within twenty days after its receipt as required by General Statutes § 21-79 (e). On December 16, 1985, the plaintiff was notified that the defendant's employees were dismantling the mobile home. Shortly thereafter the defendant offered to buy the mobile home for the original purchase price of $10,800. On January 2, 1986, the defendant's employees continued to dismantle the mobile home, removing the vinyl skirting, television antenna, awnings, porch gutters, central air con-

ditioning unit, and lines. The defendant did not notify the plaintiff that the mobile home had been dismantled in preparation for off-site storage, did not serve a notice to quit possession of the lot, and never obtained court authority for its action.

The plaintiff obtained a temporary restraining order on January 3, 1986, to prevent the defendant from further dismantling the mobile home. On February 28, 1986, the commissioner of consumer protection issued a declaratory ruling concerning the on-site resale of the mobile home owned by Keiper's estate. This ruling declared that the new owner, whether the estate or the heirs, had the right to sell the home pursuant to General Statutes § 21-79, but that the mobile home was not safe, sanitary, nor in conformance with the park's aesthetic standards for resale in its dismantled condition.

The plaintiff brought this action, seeking injunctive relief and monetary damages. The defendant raised a number of special defenses, including a claim that the plaintiff had abandoned the mobile home. The defendant also filed a counterclaim to collect the rent allegedly due since August 1, 1985.

In rejecting the defendant's special defense of abandonment, the trial court found that the plaintiff had continued to visit the home every two weeks to maintain the exterior grounds and the interior until July, 1985, when the defendant refused an on-site sale, and that thereafter, the plaintiff had visited monthly.

The trial court rendered judgment for the plaintiff, rejected the defendant's special defenses, and found for the plaintiff on the defendant's counterclaim. This appeal followed.

# I

The defendant claims that the trial court erred in holding that General Statutes § 21-79 supersedes the

1982 supplemental judgment in an action the defendant had brought against the town of Prospect; *Liberty Mobile Home Sales, Inc.* v. *Prospect,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 106145 (September 23, 1982); and in concluding that, because the plaintiff was not required to abide by the permit requirements of that judgment, she had resale rights in respect to the mobile home.

In that action, the defendant in this case sought declaratory and injunctive relief against the enforcement of certain Prospect zoning regulations. In a supplemental judgment, the court ordered "[t]hat all owners of mobile homes within the park will be required to obtain a building permit and certificate of occupancy from the Town prior to resale of their mobile homes . . . ."

This court's holding in *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, supra, defeats the defendant's claim. In *Eamiello,* we noted that, because the plaintiffs were not parties to the defendant's suit against the town of Prospect and were not notified of the supplemental judgment until after it had been rendered, they were not bound by the judgment under principles of res judicata or collateral estoppel. We held, nevertheless, that "the terms of the judgment bind the plaintiffs to the same extent as the other lease provisions but have no independent force." Id.

We stated that "§ 21-79 (a) prohibits the operator of a mobile home park from requiring for approval of the on-site resale of a mobile home anything more than that the home be 'safe, sanitary and in conformance with aesthetic standards.' Thus, the requirement of the 1982 supplemental judgment referred to in the lease that the plaintiffs 'obtain a building permit and certificate of occupancy from the town prior to resale,' like other resale provisions in the lease, is invalid because it

imposes a requirement not sanctioned by § 21-79 (a). Although a provision for such a certificate might be a reasonably efficient method of satisfying the safe and sanitary statutory standard, it cannot be made a sine qua non to approval of a resale." Id., 635.

The facts of the present case are indistinguishable from those in *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, supra. The record indicates that neither Isabel Keiper nor the plaintiff was a party to the prior action brought by the defendant in this case against the town of Prospect. Accordingly, the lease provision incorporating the 1982 supplemental judgment is similarly invalid, because it imposes a requirement for resale not sanctioned by § 21-79 (a).[3]

The defendant petitioned the department of consumer protection for a declaratory ruling on the validity of the defendant's resale standards and the constitutionality of § 21-79. In response, the commissioner issued a declaratory ruling that the defendant's resale standards requiring zoning and building permits and a certificate of occupancy contravened statutory provisions. On appeal, the defendant claims that the commissioner's ruling had the effect of overruling a decision of the Superior Court. We disagree.

As explained above, the lease provision incorporating the supplemental judgment was superseded by an act of the legislature. The supplemental judgment is still valid as between the original parties, but this plaintiff is not bound by it because she was not a party to the original action. The commissioner, therefore, properly interpreted the supplemental judgment resale standards as contravening § 21-79.

---

[3] On appeal, the defendant makes no claim that General Statutes § 21-79 infringes upon the liberty of contract. Cf. *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, 208 Conn. 620, 625 n.5, 546 A.2d 805 (1988) (defendant's claim that General Statutes § 21-79 [a] infringes upon liberty of contract considered abandoned).

## II

The defendant's next claim is that the trial court erred in failing to find that the plaintiff had abandoned the mobile home, thereby entitling the defendant to dismantle it. The defendant agreed at oral argument that this claim involves an issue of fact.

This court has long held that abandonment implies a voluntary and intentional relinquishment of a known right. *Cummings* v. *Tripp,* 204 Conn. 67, 93, 527 A.2d 1230 (1987); *Bianco* v. *Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969). It is not the function of this court to retry facts, however, and therefore, the scope of our review is limited to determining whether the trial court's factual finding was clearly erroneous in light of the evidence and the pleadings on the record as a whole. *Commission on Hospitals & Health Care* v. *Stamford Hospial,* 208 Conn. 663, 674–75, 546 A.2d 257 (1988); *Mallory* v. *Mallory,* 207 Conn. 48, 55, 539 A.2d 995 (1988).

Our limited review of a challenge to the trier's factual findings, however, presupposes that the party claiming error has complied with the relevant rules of practice. Practice Book § 4061 states that "[i]t is the responsibility of the appellant to provide an adequate record for review." Accordingly, when a party challenges a factual finding as clearly erroneous, that party must file the relevant evidence that exists in the case, such as the transcript or exhibits, to enable the appellate court to consider the issue. See *Perrotti* v. *Massa,* 183 Conn. 16, 17, 438 A.2d 806 (1981). The defendant should have filed, for example, the transcript pertaining to the trial court's finding that the plaintiff made regular visits to the mobile home to inspect it. Because the defendant has failed to provide this court with an

adequate record for review, there is no basis for reversing or modifying the trial court's decision on this factual issue. Id.

The defendant raises two additional arguments that it claims require a finding of abandonment as a matter of law.

First, the defendant claims that, when the plaintiff stopped paying rent in July, 1985, abandonment occurred. This court has held, however, that nonpayment of rent does not terminate a tenancy, but gives the landlord the option to terminate the lease by some unequivocal act clearly showing the exercise of that option. *Mayron's Bake Shops, Inc.* v. *Arrow Stores, Inc.,* 149 Conn. 149, 156, 176 A.2d 574 (1961); *Chapel-High Corporation* v. *Cavallero,* 141 Conn. 407, 411, 106 A.2d 720 (1954).

Second, the defendant claims that there also was an abandonment because the mobile home was not occupied for approximately one year. In *Cummings* v. *Tripp,* supra, however, this court held that the mere discontinuance of a use, where there is no intent to abandon, is not enough to establish abandonment. Further, in *Thompson* v. *Merlino Enterprises, Inc.,* supra, 661, we held that "[t]he owner of a mobile home, such as the administrator of an estate, need not actually reside in the park to qualify as a resident under § 21-79." These authorities clearly indicate that nonuse alone does not require a conclusion of abandonment.

## III

The defendant claims that the trial court erred in finding that the defendant's actions violated CUTPA. The trial court found that the defendant's actions constituted unfair or deceptive practices in three respects: (1) the defendant continuously refused to allow the plaintiff to resell "on-site" a safe, sanitary, and aes-

thetically conforming mobile home, in violation of General Statutes § 21-79; (2) the defendant dismantled the plaintiff's mobile home, thereby offending the public policy embodied in General Statutes § 21-80 which makes summary process available for evicting a mobile home resident; and (3) after dismantling the mobile home, the defendant offered to purchase the plaintiff's mobile home "as is," for the original purchase price of $10,800 when it had been appraised at $28,000 on December 5, 1984.

A

In determining whether a practice violates CUTPA, we use the following criteria: " ' "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." *Conaway* v. *Prestia*, [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n.8, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972) . . . .' *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 568, 473 A.2d 1185 (1984); see also *Sportsmen's Boating Corporation* v. *Hensley*, 192 Conn. 747, 756, 474 A.2d 780 (1984). Thus, a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., *Sprayfoam, Inc.* v. *Durant's Rental Centers, Inc.*, 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy." *Web Press Services Corporation* v. *New London Motors, Inc.*, 203 Conn. 342, 355, 525 A.2d 57 (1987).

In *Eamiello,* this same defendant contended that § 21-79 was unconstitutional both as written and applied. Although we rejected that claim, we noted that the defendant's reliance on *Hall* v. *Santa Barbara,* 833 F.2d 1270 (9th Cir. 1986), reh. denied, 833 F.2d 1282 (9th Cir. 1987), cert. denied, 485 U.S. 940, 108 S. Ct. 1120, 99 L. Ed. 2d 281 (1988), lent some support for its claim that § 21-79 was unconstitutional. We held that "[a]lthough the subjective good faith of one who has in fact performed an unfair or deceptive act is not a defense to a CUTPA violation, there is nothing unfair or deceptive in a reasonably grounded constitutional challenge of a statute." *Eamiello* v. *Liberty Mobile Home Sales, Inc.,* supra, 654.

The defendant has made the same constitutional claim in this case, and this claim was briefed and filed before this court released its opinion in *Eamiello.* We conclude, therefore, that under the circumstances of this case, the first ground relied upon by the trial court for finding a CUTPA violation is not sound, and is therefore vacated.

### B

The third ground relied upon by the trial court was that the defendant offered $10,800 for the plaintiff's mobile home, when it was worth $28,000. This offer was not accepted by the plaintiff. We have held that § 21-79 serves the substantial public purpose of protecting the economic interests of mobile home tenants in selling their homes on-site. Id., 648. Section 21-79 protects tenants from being forced to sell their homes to park owners at a substantial loss by restricting the circumstances under which a park owner may reject a prospective buyer, and as a consequence, benefits many low income people who cannot afford to purchase more expensive housing. Id. This legislation, however,

does not under any circumstances impose an obligation upon park owners to offer to purchase a tenant's mobile home for the current appraised value or for any other price. Accordingly, it can hardly be considered "unfair" for the defendant to have made its offer, when it was under no obligation to do so, and the plaintiff was under no obligation to accept such an offer.

This court has long held that an offer imposes no obligation upon either party, until it is accepted by the offeree, according to the terms in which the offer was made. *Ocean Ins. Co.* v. *Carrington,* 3 Conn. 357, 362–63 (1820); cf. *Randolph Construction Co.* v. *Kings East Corporation,* 165 Conn. 269, 276, 334 A.2d 464 (1973). Our holdings adhere to the basic principle of contract law that an offeror is the master of his offer, and therefore, is not obligated to make an offer on any terms except his own. See E. Farnsworth, Contracts (1982) § 3.13. We conclude that § 21-79 was not intended to alter this common law principle.

The plaintiff maintains that the defendant's offer nonetheless constituted an unfair practice because of the disparate economic strengths of a park owner and a tenant. As we stated above, however, the defendant was under no obligation to offer to buy the plaintiff's mobile home. The fact that the defendant may have had superior financial resources, therefore, does not render "unfair" the offer that the defendant actually made. See *Fairfield Lease Corporation* v. *Romano's Auto Service,* 4 Conn. App. 495, 498–99, 495 A.2d 286 (1985) ("[s]uperior bargaining power in itself is not enough to strike down a resultant contract as unconscionable"). We conclude that the plaintiff could not have been damaged by the defendant's offer, and therefore, we vacate the trial court's finding of a CUTPA violation based upon this ground.

## C

The trial court found further that the defendant violated CUTPA when it dismantled the plaintiff's mobile home, rather than evict her pursuant to the summary process procedures set forth in General Statutes § 21-80. We agree with this conclusion.

By enactments dating back to colonial times, our legislature has proscribed the use of self-help remedies in obtaining possession of demised premises. *Orentlicherman* v. *Matarese,* 99 Conn. 122, 125–26, 121 A. 275 (1923). A colonial enactment from 1722, for example, established fines and a cause of action to remedy "any Forceable Entry made into any lands, tenements or other Possessions . . . or of any wrongful detainer of any lands, tenements, or other possessions, with force and strong hand." 6 Colonial Records of Connecticut 1717–1725, p. 343; see also General Statutes § 47a-43 ("Complaint and procedure: Forcible entry and detainer"). These legislative enactments were designed to "protect . . . peaceable possession . . . from disturbance by any but lawful and orderly means"; *Orentlicherman* v. *Matarese,* supra, 126; and to protect the "peace of the neighborhood." (Emphasis omitted.) *Dutton* v. *Tracy,* 4 Conn. 79, 86 (1821).

As we stated above, CUTPA was designed to protect the public from unfair practices, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy. Certainly, therefore, a violation of CUTPA can be found in the case at hand, where the defendant's actions violate the public policy found in two subdivisions of General Statutes § 47a-43 (a). Subdivisions (3) and (4) of § 47a-43 (a) establish causes of action "[w]hen any . . . person enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal

of or detention of the personal property of the possessor" or "when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession . . . ."

These provisions of § 47a-43 uphold the long-standing public policy against proceeding by way of self-help remedies when evicting a tenant, especially when a landlord has available the summary process procedures found in chapter 832 of the General Statutes. This public policy dictates that landlords proceed against mobile home owners according to those statutes put in place to enable them to enforce their legal rights. By dismantling the plaintiff's mobile home, and disregarding the mandatory procedures set forth in § 21-80, therefore, the defendant violated the long-standing public policy found in § 47a-43 of protecting a "peaceable possession . . . from disturbance by any but lawful and orderly means." *Orentlicherman* v. *Matarese,* supra, 126.

The defendant claims that it was nonetheless entitled to dismantle the plaintiff's mobile home, because it believed in good faith that the plaintiff was not a resident, and therefore, there was no ascertainable person against whom the defendant could have brought a summary process action. We disagree with the defendant's contention for two reasons. First, as we held in *Eamiello* v. *Liberty Mobile Home Sales, Inc.,* supra, 654, "the subjective good faith of one who has in fact performed an unfair or deceptive act is not a defense to a CUTPA violation . . . ." Second, the facts of this case undercut the defendant's claim that it knew of no one against whom it could have brought a summary process action.[4] The record indicates that,

---

[4] During oral argument, the date on which the plaintiff had been appointed administratrix was the subject of a dispute between the parties. The plain-

after her mother's death, the plaintiff paid the rent from December 1, 1984, to July 1, 1985, sought approval of a resale, and continued to visit the premises during the period involved. These are all manifestations of the plaintiff's claim to possession of the mobile home and the premises upon which it sat. Accordingly, we conclude that the trial court properly found that the defendant's actions in dismantling the mobile home violated CUTPA.

In view of the fact that the trial court's award of $5000 in punitive damages was based on three grounds, two of which we find to be inadequate, we remand for a further hearing on the award of punitive damages and attorney's fees, both of which were based on the CUTPA violations.

## IV

The defendant's final claim is that the trial court erred in denying the defendant recovery on its counterclaim for unpaid rent allegedly due from August 1, 1985, to December 26, 1985.[5] The trial court ruled that the defendant could not recover on its counterclaim, because the defendant had rendered the plaintiff's home untenantable by dismantling it.

The defendant claims that no evidence was introduced at trial that the mobile home was untenantable

tiff claimed to have been appointed in June, 1985, while the defendant maintained that she had not been appointed until November, 1985. It is unnecessary to resolve this issue, because it is clear that at the time that the defendant began dismantling the mobile home, the plaintiff had been appointed administratrix, and the defendant could have proceeded against her in a summary process action.

[5] On appeal, the defendant claims that it is entitled to unpaid rent for the period of July 1, 1985, to December 26, 1985. In its counterclaim as pleaded in the trial court, however, the defendant claimed rent only from August 1, 1985. The counterclaim was never amended. Therefore, we shall limit our consideration of this claim of error to the starting date specified in the defendant's counterclaim.

prior to December, 1985, when the defendant began dismantling the mobile home. The plaintiff does not dispute this claim, but asserts instead that the trial court's decision can be sustained on the basis of the defendant's failure to approve the condition of the mobile home for resale.

We conclude that the trial court's finding was erroneous, and therefore, we vacate the trial court's ruling on the counterclaim to the extent that it pertains to the period before the dismantling of the mobile home. In view of the fact that the trial court made no finding as to whether the defendant's refusal to approve the proposed sale caused the plaintiff any damage, however, the plaintiff should be given the opportunity on remand to prove that the defendant's interference with that right caused her damage, and therefore, that she should not have to pay rent for the period in question.

There is error in part, and the judgment is affirmed, except as to the amount of punitive damages and attorney's fees awarded for the CUTPA violations found, and except as to the liability of the plaintiff under the counterclaim for rent prior to the dismantling of the mobile home. With respect to both of these matters, the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.