[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiffs, DBL Enterprises, Inc., ("DBL") and Dominique Walsky president and fifty percent shareholder of DBL, bring this five count complaint against two defendants, Ylang-Ylang, Inc., a corporation owning fifty percent of DBL, and Jacques Gastaldi, an officer of DBL and the president/substantial owner of Ylang-Ylang. In count one, plaintiffs claim that defendant Ylang-Ylang breached a license agreement allegedly executed between the parties. Count two sounds in tortious interference with contract against defendant Gastaldi. Plaintiffs' third count sounds in the breach of a stock purchase agreement against defendant Ylang-Ylang. The fourth count incorporates the first and third counts and alleges a violation of Conn. Gen. Stat. 42-110a (CUTPA). In the fifth count, plaintiff incorporates the first and second counts and again claims that the defendants violated Conn. Gen. Stat.42-110a (CUTPA). As a result of these acts, plaintiffs claim both monetary and punitive damages.
Pursuant to Conn. Practice Bk. 151 et seq., defendants move this court to strike counts two and five of plaintiffs' amended complaint on the grounds of legal insufficiency. The defendants filed a memorandum in support of their motion and plaintiffs filed a memorandum in opposition. Subsequently, the defendants filed a reply memorandum to plaintiffs' memorandum in opposition.
A motion to strike is the proper vehicle to contest the legal sufficiency of a complaint. Conn. Practice Bk. 152. The facts of the complaint must be construed in the manner most favorable to the pleading party. Mozzochi v. Beck, 204 Conn. 490,491 (1987). The motion to strike admits all well pleaded facts but neither admits the legal conclusions nor the truth or accuracy of opinions stated therein. Mingachos v. 1 CBS, Inc.,196 Conn. 91, 108 (1985).
The gravamen of defendants' challenge to plaintiffs' second count sounding in tortious interference with contractual relations is twofold:
 a) that Connecticut does not recognize a claim of tortious interference by one who is directly or CT Page 347 indirectly a party to the contract and therefore, defendant Gastaldi is immune from liability because of his corporate position; and
 b) that the plaintiffs' claim lacks sufficient facts to state a claim in tortious interference with contractual relationship.
The elements of a cause of action in tortious interference "are the existence of a contractual or beneficial relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff." Hart, Nininger Cambell Associates, Inc. v. Rogers, 16 Conn. 1 App. 619, 629 (1988). The plaintiff must plead and prove at least some improper motive or improper means; Blake v. Levy, 191 Conn. 257, 262
(1983). Solomon v. Aberman, 196 Conn. 359, 365 (1985). The tortious element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation. . . ." Robert S. Weiss Associates v. Widerlight,208 Conn. 525, 536 (1988).
Both parties agree that Connecticut recognizes the general principle that the "interferor" cannot by a party to the contract or business relationship, but must occupy the position of a third party. See Multi-Service Contractors, Inc. v. Vernon, 193 Conn. 446,451 (1984). "Thus, an agent may [generally] not be charged with having interfered with a contract of the agent's principal." Shelby v. Pelletier, 1 Conn. App. 320, 327 n. 4 (1984). If a corporate officer, however, acts outside the scope of his authority, the court has recognized that he may be liable for tortiously interfering with a corporate contract. See Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 61 (1984), see also Powell v. Feroleto Steel Co., Inc., 659 F. Sup. 303, 307 (D. Conn. 1986) (applying Connecticut case law).
It is found that for the purpose of a motion to strike, all that is necessary is that a plaintiff allege improper motivations or means on the part of the defendants. See Generally, Blake,191 Conn. at 262. An act of interference is made tortious when the actor's behavior is "improper". Id. at 261.
In order to determine whether an act alleged to constitute tortious interference is improper, it is found that the critical inquiry analyzes the competing personal and corporate interests. In the instant case, where the claimed impropriety arises out of personal financial benefits, it is found that a useful guide is the principle that has evolved to delineate certain limitations concerning the corporate protection afforded to corporate officers. CT Page 348
It is recognized that:
 Officers, directors, agents or employees who have an interest in the activities of a corporation or the duty to advise or direct such activities should be immune from liability for inducing the corporation to breach its contract, assuming their actions are in pursuit of such interests or duties. Public policy demands that so long as these parties act in good faith and for the best interests of their corporation, they should not be deterred by the danger of personal liability. Any other position would make the limited liability of a corporation somewhat meaningless.
 On the other hand, the corporate veil should not stand as a means of protection for those who choose to employ corporate power to serve their own ends. Tort liability should be swiftly imposed whenever an officer, director, employee or stockholder induces a breach of contract for private benefit or to satisfy personal feelings against a third party. The limited liability of the corporate charter was granted for corporate purposes. Where such purposes no longer exist, there should be no limited liability. (emphasis added).
See Alfred Avins, Liability For Inducing A Corporation To Breach Its Contract, 43 Cornell L.Q. 55, 65 (1957); see also Murray, 40 Conn. Sup. at 61.
Consonant with this maxim, it is found that defendant Gastaldi may only be deprived of the immunity afforded to him by his corporate status if he employed corporate power solely for his own benefit rather than for corporate purposes.
In count two which incorporates the preceding paragraphs, plaintiffs set forth the numerous, potentially conflicting corporate positions held by defendant Gastaldi as: (a) secretary, treasurer, and director of plaintiff DBL, (b) president of defendant Ylang-Ylang, (3) participant in Ylang-Ylang, Inc., and (d) officer in Ylang-Ylang Diffusion, Inc., a merchandise supplier to the corporations. Paragraphs nine (9) through twelve (12) expound the parties relationships and agreements thereto, copies of which are attached to the complaint and incorporated by reference. Count two further alleges a breach of the license agreement and that defendant Gastaldi tortiously interferred with the parties' contract for his own financial benefit in that he "induced defendant Ylang-Ylang to breach its contract" with DBL and "interferred with [DBL's] financial expectations." CT Page 349
In assessing the allegations of count two most favorably to the plaintiff, including the facts implied under them, see Dennison v. Klotz, 12 Conn. App. 570, 577 (1987); it is found that plaintiff has sufficiently alleged that the defendant "improperly" acted to benefit himself so as to fulfill the improper motivation element of tortious interference with contractual relations. Therefore, it is found that plaintiff's second count is legally sufficient so as to withstand defendants' motion to strike.
The defendants next challenge plaintiffs' fifth count sounding in CUTPA. In the memorandum in support of their motion to strike, defendants initially did not attack the legal sufficiency of the allegations of count five per se as concerns a claim sounding in CUTPA. The posture of defendants' argument was that since count five was premised upon the legally insufficient claim in count two of tortious interference with contract, it was axiomatic that said acts could not constitute the foundation for a claim alleging a violation of CUTPA.
In their reply brief, however, defendants challenge the fifth count on the additional ground that plaintiffs have failed to allege facts to show that defendant Gastaldi's alleged conduct was immoral, unethical, or unscrupulous and caused substantial injury to consumers or businessmen. Therefore, defendants claim that count five is legally insufficient. CUTPA actions may be brought by a consumer or business competitor; Daddona v. Liberty Mobile Home Sales, Inc.,209 Conn. 243, 254 (1988); and are not limited to conduct involving consumer injury. See McLaughlin Ford, Inc. v. Ford Motor Co.,192 Conn. 558, 566 (1984). CUTPA provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by 42-110g(a). "Person" is defined in 42-110a(3) as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and and other legal entity." CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Webb Press Services Corp. v. New London Motors,203 Conn. 342, 354 (1987).
In determining whether an alleged act violates CUTPA:
 the court should employ these criteria: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other CT Page 350 words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . ."
Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254
(1988) (emphasis added). All three criteria need not be satisfied to support a finding of unfairness and "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Atlantic Richfield Co. v. Cannan Oil Co., 202 Conn. 234, 242
(1987). ". . .[A] violation of CUTPA may be established by showing either an actual deceptive practice. . .or a practice amounting to a violation of public policy." Web Press,203 Conn. at 355. "The public interest requirement of a private action under CUTPA has been eliminated. . . ." Fortini v. New England Log Homes, Inc., 4 Conn. App. 132, 137 n. 1 (1985); see also Gibbs, 651 F. Sup. 1419 (D. Conn. 1987).
In this case, plaintiffs allege that the parties had a contractual and beneficial relationship concerning a certain jewelry business. Plaintiffs further allege certain official positions held by defendant Gastaldi in the respective corporations which are parties to this law suit. Furthermore, plaintiffs claim that defendant Gastaldi, as secretary, treasurer, and director of plaintiff DBL, and president of defendant Ylang-Ylang, and officer of Ylang-Ylang Diffusion, Inc., acting in his individual capacity for his own personal gain, tortiously interferred with the corporations' contractual relationship by inducing defendant Ylang-Ylang to breach its contract with plaintiff DBL.
Given the procedural posture and standard for a motion to strike, see Dennison, 12 Conn. App. at 577, it is submitted that the actions of defendant Gastaldi, in allegedly improperly inducing defendant Ylang-Ylang to breach its obligations for his own benefit are, if proven, "within at least the penumbra of some. . .established concept of unfairness." See Web Press, Conn. at 355. Therefore, it is found that the allegations of count five state a legally sufficient claim of CUTPA.
The defendants' motion to strike counts two and five is denied.
WILLIAM F. HICKEY, JR., JUDGE CT Page 351