[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiff claims the defendant failed to properly and legally honor a court issued execution served on it in connection with an account of its depositor, the J.H. Hogan, Inc. (hereinafter "Hogan"). The plaintiff obtained a judgment against Hogan in the Superior Court in the Judicial District of Waterbury. Thereafter, because the judgment was not satisfied, the plaintiff obtained an execution issued by the Clerk of the Waterbury Superior Court (Plaintiff's Exhibit 2), dated October 11, 1991, seeking to recover unpaid damages in the amount of $21,000.00. This execution was given to a Deputy Sheriff who CT Page 4787 served it upon the defendant on Friday, October 25, 1991. On October 25, 1991, Hogan had a balance in its checking account at the defendant's bank of $5,326.97. The defendant honored a check that cleared on the following Monday in the amount of $380.15, and thereafter, paid itself the monies which remained in the account, $4,945.82, as a "set-off" for loans which the bank claimed were in default. Although the bank claims the set-off was made on Monday, October 28, by virtue of its "proof ticket", dated October 28 (Defendant's Exhibit 2), the commercial loan payment of the defendant bank or "set-off" was not entered on the account of Hogan until October 29, 1991. (Plaintiff's Exhibit 4) The Deputy Sheriff was subsequently notified that as of the date of the execution, there were no funds available. The court notes that on October 29, Hogan made a deposit in their account of $87,047.02, and that on October 29, 30 and 31, the balance in the Hogan account was $63,633.62, $54,620.06 and $51,673.23, respectively. (See Plaintiff's Exhibit 4) In any event, the same Deputy Sheriff again made demand on the defendant bank on Wednesday, November 6, 1991, with the same unsatisfied execution. On that date, there was a balance in the Hogan account of $31,304.86. Again, although the defendant bank claimed to exercise its right of "set-off" of $31,303.86 in connection with a loan in default, it did not enter its "set-off" or commercial loan payment on the Hogan account until November 8, 1991. (See Plaintiff's Exhibit 4) The defendant does claim nonetheless that the "set-off" of $31,303.86 was done on November 7 by virtue of its "proof ticket" of that date (Defendant's Exhibit 2). The defendant then notified the plaintiff that there were no funds available to satisfy the execution. The plaintiff claims that the defendant did not have the right to "set-off" in derogation of its rights and further claims that its actions were a violation of the Connecticut Unfair Trade Practices Act.
The issues which the court must decide are whether the defendant bank had a right to "set-off" and if it did, whether it exercised it properly. The plaintiff claims the defendant failed to comply with the provisions of Connecticut General Statutes 52-367a. That statute provides that "Such banking institution shall act upon such execution according to 42a-4-104." Midnight deadline, as defined in 42a-4-104(10) is midnight on its next banking day following the banking day on which it receives the relevant notice or item. In the instant matter, the defendant bank had until Monday, October 28 to act upon the execution that was served on October 25, and on the second occasion, the execution was served, the defendant had until midnight, Thursday, November 7 to CT Page 4788 act on the plaintiff's execution. In both instances, the court finds that the defendant failed to act within the midnight deadline. Even assuming the defendant had the right to set-off and assuming that the defendant could use this deadline to pay its own obligations, the defendant bank failed to act timely. The court rejects the self-serving testimony of the bank employees who testified that the proof tickets (Defendant's Exhibits 1 2) were sufficient to debit the account. The proof tickets, although prepared by the employees who testified, also have a box marked "Approved by", which were signed by other bank official who did not appear to testify. The court is not convinced that the proof slips were, in fact, approved on the day noted on the slips, since the statement (plaintiff's Exhibit 4) records the set-off the following day after the midnight deadline in both instances. The court was offered no plausible explanation why the defendant bank could not have debited the Hogan account within the midnight deadline on the statement of their depositor Hogan if, in fact, this is what they intended to do. The court places more credence on the Hogan statement (Plaintiff's Exhibit 4) as to the date the account was debited than the statements of the defendant's employees who testified that the accounts were debited on the date they prepared the "proof tickets." State v. Crump, 201 Conn. 489, 491,518 A.2d 378 (1986).
The more critical question, however, is whether the defendant had the right to set-off their claimed debt. The defendant agrees that the loan documents (Defendant's Exhibit 3) do not specifically provide the right of set-off. The defendant relies on the common law right of set-off which is founded in the court's equity powers. The defendant cites the case of Sullivan v. Merchant National Bank, 108 Conn. 487 in support of its common law right of set-off. The bank's right of set-off was recognized as a common law right as discussed in Sullivan. Although in that case, the depositor's debt was not yet due, the depositor was insolvent at the time of the set-off. It was based on the depositor's insolvency that allowed the bank to set-off its debt. "Insolvency of itself will often raise an equity which will justify the interference of the court." Id. at 501. There was no evidence in this case that Hogan was insolvent. In fact, there was evidence that after the first demand that was made upon the defendant bank on October 25, 1991, that Hogan made a substantial deposit into its account on October 29, and kept five figure balances in its account until the final demand made upon the defendant on November 6. Furthermore, the equity considerations giving rise to the common law right of set-off do not exist in this case. CT Page 4789
 "If no rights of third parties are effected and no superior equity arises out of the contract of the parties under the particular circumstances of the transaction the fact that both debts are subsisting debts and only by allowing their set-off can they be treated upon an even basis and the owner of the debt not yet due escapes an unjust loss, creates the equity upon which the allowance of the set-off rests." Id. at 502.
The defendant bank knew that the rights of third parties would be adversely affected, and, in fact, were adversely affected by its attempted set-off. Furthermore, the bank sought to exercise a common law right invoking the court's equity powers. As the court said in Sullivan "He who seeks equity must himself do equity." Id. at 50. This court will not exercise its equity powers on behalf of a defendant who has intentionally ignored an order of this court. The court finds that the defendant under the facts of this case had no right to set-off its debt and that its action in so doing was improper.
Having found the defendant's attempted set-off was both untimely and improper, the court will consider the plaintiff's claim of a CUTPA violation as alleged in count three of the complaint. The defendant has already questioned, by virtue of its Motion to Strike, whether the provisions of CUTPA are applicable to banks. In denying the defendant's motion, the Court, Langenbach, J., agreed with those decisions of the Superior Court which have not excluded banks from the provisions of C.G.S. 42-110 et seq., the Connecticut Unfair Trade Practices Act. Recognizing that although Judge Langenbach's decision may be the "law of the case", the court is not bound to follow this decision. Rosenblit v. Danaher,206 Conn. 125 (1988). Our Appellate Courts have not yet considered this question, and the court is well aware of the split of decisions within our Superior Court relative to this issue. After reviewing the conflicting views on both sides of this issue, this court agrees with Judge Langenbach and my other colleagues who agree that CUTPA should apply to banks. See Economic Development Associates, et al v. CityTrust, 3 Conn. L. Rptr. 403 (1991) (Dranginis, J.); The Connecticut National Bank v. George Gager, et al, 6 CSCR 511 (1991) (Leuba, J.); Faitella, et al v. North Atlantic Planning Corporation, 5 Conn. L. Rptr. 431 (1992) (Byrne, J.). The court is persuaded by the reasoning of these cases that have CT Page 4790 held CUTPA applicable to banks, including the argument that if our Legislature intended to exempt banks from our CUTPA statutes, they would have done so.
The statutes governing unfair trade practices and in particular, C.G.S. 42-110b(a) provides that "[n]o person shall engage in unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining whether a practice violates CUTPA, our Supreme Court has provided the following criteria:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, of otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businessmen."
Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254,550 A.2d 1061 (1988). The court finds the defendant's actions in this case measured by this criteria does constitute an unfair and deceptive trade practice. The defendant did fail to comply with the provisions of 52-367 when it was served with the execution, thereby offending public policy. Ignoring an order of this court with the flagrance demonstrated by this defendant not only offends public policy, but also is unfair, deceptive, oppressive and unscrupulous and has substantially injured consumers. The only time this defendant acted to "set-off" its debt was when it was faced with a court order to execute on the funds in the Hogan account. There were monies in the Hogan account before and after the Sheriff made demand on October 25 that the defendant did not elect to "set-off." In fact, a deposit of $87,000.00 was made to the Hogan account the day after the first execution that the bank made no attempt to "set-off." During the period in question, October 25 through November 6, the bank chose to pay checks drawn on the account and itself but refused to honor a court order to pay a judgment creditor. To add insult to injury, the defendant notified the Sheriff after his demand on it on both occasions that there were "no available funds" (see Plaintiff's Exhibit 3). There was no mention of the "set-off." This response (Plaintiff's Exhibit 3) was deceptive and came close to a misrepresentation. CT Page 4791 The actions of the defendant in this case were unfair, illegal, they offended public policy and above all, they were an affront to this court. The court finds, therefore, that the defendant did violate the provisions of our CUTPA statutes, as alleged in the third count of the complaint.
For the reasons stated above, Judgment shall enter for the plaintiff as against the defendant on counts one, two and three of the complaint only, in the amount of $21,000.00, plus interest from November 7, 1991 and a reasonable attorney's fee.
PELLEGRINO, J.