[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO STRIKE
The plaintiff in his complaint has alleged that in the course of his work as an insurance agent he worked hard to assemble a life insurance product for a customer, one John Orsini. When he finally sent the application to Orsini for final signature and a check, Orsini in some manner showed the product to the defendants, two agents and an insurance agency. The defendants "misappropriated" the plaintiffs work product and submitted virtually the same product themselves to MassMutual. As a result, the plaintiff suffered damages, presumably the loss of the commission to the defendants. The complaint is in three counts: the first is grounded in tortious interference with business expectancies, the second alleges unjust enrichment, and the third alleges a violation of § 42-110b et seq. of the General Statutes, the Connecticut Unfair Trade Practices Act ("CUTPA").
The defendants have moved to strike each count of the complaint. As to the first count, the defendants argue that there are no facts alleged to support the assertion that any interference was tortious; as to the second count, the defendants assert that there is no allegation of any sort of contractual relation between the plaintiff and the defendants, so the claim of unjust enrichment must fail; and the defendants maintain that relief cannot be granted as to the CUTPA count because no facts are alleged to support the requirement that the conduct be deceptive, unscrupulous, illegal or unethical and because only one act is alleged. The defendants' position in a nutshell is that this is the sort of competition which happens routinely in the conduct of business affairs.
A motion to strike tests the legal sufficiency of a pleading. Ferrymanv. Groton, 212 Conn. 138, 142 (1989); Practice Book § 10-39. It admits all well pleaded facts, and the court must construe facts alleged in a pleading in the manner most favorable to the nonmoving party. Rowev. Godou, 209 Conn. 273, 278 (1988); Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170 (1988). If facts provable under a complaint, together with reasonable inferences drawn in a light most favorable to the nonmoving party, would support a cause of action, the motion to strike must be denied. Waters v. Autuori, 236 Conn. 820, 825-26
(1996). "The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of a complaint for failure to state a claim on which relief can be granted. Practice Book § 10-39. The motion admits all facts that are well pleaded; Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985); but does not admit legal conclusions or the truth or accuracy of opinions. Maloney v. Conroy,208 Conn. 392, 394, 545 A.2d 1059 (1988). On a motion to strike, the trial court's inquiry is to ascertain whether the allegations in each count, if proven, would state a claim on which relief could be granted. Practice Book § 10-39(a). A motion to strike is properly granted if the CT Page 10421 complaint alleges mere conclusions of law that are not supported by the facts alleged. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992)." Bennett v. Connecticut Hospice,Inc., 56 Conn. App. 134, 136-37 (1999).
The defendant argues that the first count should be stricken because it fails to state facts on which it could reasonably be concluded that any interference with business expectancies was tortious. "[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." Blake v. Levy, 191 Conn. 257, 261 (1983). See also RobertS. Weiss Associates v. Wiederlight, 208 Conn. 525 (1988). Justice Peters, the author of Blake, cites the Restatement for the proposition that the interference, to be actionable, must be intentional and "improper", and notes, at 266 n. 3, the following considerations in determining whether the interference is improper:
 4 Restatement (Second), Torts 67 (1979) provides: "FACTORS IN DETERMINING WHETHER INTERFERENCE IS IMPROPER" In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
 (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.
Because the improper nature of the interference is an essential element of the cause of action, it must be pleaded by the proponent. Blake, supra, 262; Kronholm Keeler v. Arthur A. Watson Co., Inc.,1997 Ct. Sup. 7883
(Hennessey, J.) (1997).[1] The issue as to the first count, then, is whether the complaint, together with reasonable inferences drawn favorably to the pleader, states facts on which relief could be granted.
The complaint alleges that in the summer of 1999 the plaintiff who had CT Page 10422 a "business and/or beneficial relationship" with the customer Orsini, began working to secure life insurance for Orsini. It may be inferred that the insurance issues were more complex and sophisticated than the usual, in light of the time and effort involved and the amount of the policy. The plaintiff prepared dozens of illustrations and spent "considerable effort" obtaining "underwriting concessions and exceptions" from MassMutual, the company chosen for the insurance. It is alleged that MassMutual agreed to insure Orsini because of the plaintiff's efforts, that Orsini agreed in early 2000 to purchase a MassMutual policy through the plaintiff and that he completed an application for such policy. On March 6, 2000, the plaintiff faxed all of the necessary documents to Orsini "with the understanding" that Orsini would sign and return the documents along with a check for the first installment of the premium. The plaintiff would then forward the documents to MassMutual and the policy would, presumably, be in effect.
The plan, however, went awry. Stamboulis alleges that he went the next day, March 7, 2000, to pick up the documents and the check and was told that Orsini was out of state and that the documents were gone. On `information and belief', the documents were signed by Orsini but not returned to Stamboulis. Shortly afterward, MassMutual issued a policy to Orsini which was identical or substantially identical to the one which Stamboulis had prepared. Stamboulis alleges that the defendants improperly misappropriated Stamboulis's work and work product through fraud, negligent or intentional misrepresentation, intimidation, molestation or with malice, and interfered with a legitimate business expectancy. He further alleges that the defendants knew of the relationship Stamboulis had with Orsini at the time of the interference and that they acted tortiously and "improperly, maliciously and through improper business motive" with the intent to injure Stamboulis and to interfere with legitimate business expectations.
The defendants argue that although the pleadings paraphrased above are replete with conclusions regarding improper conduct, there are no factual allegations which support a conclusion other than that this was an example of a legitimate competitive business practice. I disagree. The facts which are alleged include the assertions that the policy was unusually large and required unusual amounts of effort, which culminated in a specialized, as opposed to generic, work product. Inferences may be made to the effect that there was no hint of complications until after the work was forwarded to Orsini and that the behavior was then furtive, which may suggest improper motive and conduct. If a virtually identical policy eventually was issued, the inference may be drawn that Stamboulis's specialized and individualized work was simply taken or copied. Although it may well turn out that the evidence does not support the claim of tortious interference, and that the entire transaction is simply an CT Page 10423 example of consumer-oriented competition, I find that there are enough facts alleged in the complaint which, together with reasonable inferences drawn in the plaintiff's favor, avoid the granting of a motion to strike.[2]
The second count realleges many of the same facts and claims unjust enrichment. The defendants claim that there can be no relief granted on the claim of unjust enrichment because there has been no allegation of a contractual or quasi-contractual relationship between Stamboulis and the defendants. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 Williston, Contracts (Rev. Ed.) § 1479." Meaney v. ConnecticutHospital Ass'n., Inc., 250 Conn. 500, 511 (1999). "Unjust enrichment is a legal doctrine which can apply in some cases where no remedy is available pursuant to an express or implied contract; in order for a plaintiff to recover for unjust enrichment it must be shown that the defendants were benefited [benefited], that the benefit was unjust in that it was not paid for by the defendants and that the failure of payment operated to the detriment of the plaintiff." Oxford Paint Hardware, Inc. v. Baxter,6 C.S.C.R. 782 (Fuller, J.) (1991), aff'd, 26 Conn. App. 941, 601 A.2d 567
(1992). Ordinarily, the plaintiff must have conferred some benefit on the defendant for which he was not equitably compensated. Nolfi v. Melson,2000 Ct. Sup. 7086, (Moran, J.) (Jun. 12, 2000). Because there is no allegation of a contractual relationship between the plaintiff and the defendants in this action, the motion to strike the second count is granted.
Finally, the defendants have moved to strike the third count for two reasons: that no specific facts have been alleged sufficient to support the CUTPA claim, and that only one act has been alleged. As summarized inA-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215-16 (1990):
 Section 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining when a practice is unfair, we have "adopted the criteria set out in the `cigarette rule' by the federal trade commission" (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]. Conaway v. Prestia, [191 Conn. 484, 492-93, CT Page 10424 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchins on Co., 405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170
(1972). McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-68, 473 A.2d 1185 (1984); see Statement of Basis and Purpose of Trade Regulation Rule 408, "Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed. Reg. 8324, 8355 (1964)." Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 239, 520 A.2d 1008
(1987); Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254, 550 A.2d 1061 (1988).
 Moreover, in 1980 the commission "reviewed those factors and concluded that [u]njustified consumer injury is the primary focus of the FTC Act, and the most important of the three . . . criteria." D. Rice, `Consumer Unfairness at the FTC: Misadventures in Law and Economics,' 52 Geo.Wash.L.Rev. 1, 4 (1983), quoting letter from FTC commissioners, December 17, 1980."[T]he Commission explained that regulation is permissible only if a practice causes [unjustified] injury that is substantial. . . . Id." Atlantic Richfield Co. v. Canaan Oil Co., supra, 242-43.
 In discussing the third criterion, the federal trade commission has stated: The independent nature of the consumer injury criterion does not mean that every consumer injury is legally "unfair," however. To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any counterfeiting benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided. Letter from Federal Trade Commission to Senators Ford and Danforth (Dec. 17, 1980) (reprinted in Averitt, "The Meaning of `Unfair Acts or Practices' in 5 of the Federal Trade Commission Act," 70 Geo.L.J. 225, 291 [1981]). (Emphasis added.) McLaughlin Ford, Inc. v. Ford Motor Co., supra, 569-70. This test is "equally applicable when a business person or competitor claims substantial injury." Id., 570.
There can be no doubt that CUTPA applies to practices among business people as well as consumer transactions. Larsen Chelsey Realty Co. v.Larsen, 232 Conn. 480, 494-98 (1995).
Much of the analysis pertinent to the first count is applicable to the consideration of the third count. If the transaction in question amounts to the tortious misappropriation of a business property, it certainly may be seemed to be the sort of deceptive, unethical or unscrupulous practice at which CUTPA is directed. "Conduct that might be actionable under CUTPA may not rise to a level sufficient to invoke tort liability. The reverse CT Page 10425 of that proposition, however, is seldom true. Provided a plaintiff shows that his or her claim is cloaked with the necessary public interest, it is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not." Sportsmen's BoatingCorporation v. Hensley, 192 Conn. 747, 756-57 (1984). See alsoPro-Fitness, Inc. v. Plankenhorn, 1995 WL 774494 (Karazin, J.) (1995);Mushroom Tray Research Group, supra. I find that sufficient facts are alleged such that, together with reasonable inferences, an unfair trade practice has been stated.
Finally, the defendants urge that only one act is alleged and that CUTPA, therefore, cannot afford relief There is indeed a significant split of authority among Superior Court decisions. I have come to the conclusion that statutory construction and common sense compel the conclusion that a single act may provide the basis for a CUTPA action, so long as the single act is committed in the course of the defendant's business or trade and other criteria are satisfied. Although it is true that § 42-110b (a) states that "[n]o person shall engage in unfairmethods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" (emphasis added), it is also true that the more specific statutory section creating civil causes of action states that "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method act orpractice prohibited by section 42-110b, may bring an. . . ." Section42-110g (a) of the General Statutes (emphasis added). The former section states the general prohibition against doing certain proscribed things; the latter specifically describes the cause of action purported to be brought under the statute. As a practical matter, it makes little sense, as a general proposition, in the trial of an action to require a plaintiff to prove not only his case but also some other CUTPA case, especially where the plaintiff already has the burden to show that the act was committed in the course of the trade or business. Without string-citing the line of authority of those who hold that a single act may, in some circumstances, support an action under CUTPA, I join that line.
The motion to strike is denied as to the first and third counts, and granted as to the second count.
 ___________________ BEACH, JUDGE