WAGNER AND WAGNER AUTO SALES, INC. *v.*
KATHLEEN B. TARRO ET AL.
(AC 26281)

Dranginis, Schaller and Peters, Js.

Argued November 28, 2005—officially released January 31, 2006

*Glenn T. Terk*, for the appellants (defendants).

*Carolyn A. Comerford*, for the appellee (plaintiff).

*Opinion*

PETERS, J. In this summary process action, a landlord has sued to recover immediate possession of a piece of commercial real estate because of the tenants' failure to pay rent. On appeal from the judgment in favor of the landlord, the tenants have raised two issues. They argue that the trial court improperly decided that (1) the landlord, an unregistered foreign corporation, was entitled to pursue its lawsuit in this state because it was not "transacting business" within the meaning

of General Statutes § 33-920 (a), and (2) the tenants failed to prove that the premises were untenantable and unfit for occupancy. We affirm the judgment of the trial court.

On August 16, 2004, the plaintiff, Wagner & Wagner Auto Sales, Inc.,[1] filed a summary process action to obtain immediate possession of commercial premises located at 462 Silas Deane Highway, Wethersfield. These premises were occupied by the defendants, Kathleen B. Tarro, Richard M. Tarro and Elegant Living, LLC, pursuant to a written sublease and rental security agreement in which the defendants had agreed to pay rent in the amount of $3600 per month commencing January 1, 2004. The plaintiff alleged that the defendants had failed to pay the rent. The defendants filed three special defenses, alleging that the plaintiff was not authorized to do business in this state, that the premises were uninhabitable and that a prior pending action barred the present lawsuit.

Rejecting each of the defendants' special defenses, the trial court rendered judgment in favor of the plaintiff. In their appeal to this court, the defendants reiterate their first two special defenses. We are not persuaded by either claim.

The memorandum of decision filed by the trial court reveals the following facts and procedural history. On or about December 28, 2000, the owner of the subject premises leased them to the plaintiff. Until October, 2003, the plaintiff operated an Indian Motorcycle franchise there.

On November 21, 2003, the plaintiff and the defendants entered into the sublease that is the subject of the present litigation. The sublease provided that the plaintiff would be liable for certain obligations under

---

[1] The plaintiff is also known as Wagner & Wagner Motor Sales.

the original lease. Specifically, the plaintiff agreed that it would "be responsible for repairs to heating, air conditioning and roof . . . [and] to contact the window installer to have the leaks repaired around the picture window in the front of the building." The defendant Richard Tarro inspected the premises prior to the signing of the sublease.

The defendants took possession of the premises on or about December 1, 2004, in order to set up their upscale antiques-furniture business. The defendants have been open for and conducting business on the premises since mid-January, 2004. Subsequent to their taking possession, the defendants notified the plaintiff that the roof was leaking, and in early January, 2004, a new roof was installed by Diamond, Inc. The defendants nonetheless continued to lodge complaints regarding the roof. As result, Diamond, Inc., returned and made additional repairs. In addition, the premises were inspected by the town building inspector and fire marshal. Although both observed puddling water on the floor and front windowsill, neither was able to locate any leaks coming from the roof.

Although there was some dispute about whether certain payments on the sublease were for rent or for a security deposit, it is undisputed that the defendants did not pay rent in June and July, 2004. For this reason, on July 22, 2004, the plaintiff caused a notice to quit possession to be served on the defendants. Thereafter, because the defendants failed to vacate the premises, the plaintiff commenced this summary process action on the ground of nonpayment of rent.[2]

The trial court rejected the special defenses that the defendants pursued at trial. It concluded that (1) the

[2] A prior summary process action, brought by the plaintiff against the defendants, was dismissed because of a defect in the notice to quit possession. The plaintiff also commenced a collection action against the defendants for unpaid rent and use and occupancy.

plaintiff was not transacting business in this state and therefore was not barred from pursuing its summary possession action even though it had neither applied for nor obtained a certificate of authority from the state pursuant to § 33-920 (a),[3] and (2) the various roof and electrical problems and code violations identified by the defendants did not render the premises unfit for the use for which they were intended and therefore did not obviate the defendants' obligation to pay rent.[4] Accordingly, the court found in favor of the plaintiff and ordered the defendants immediately to release possession of the premises.

In their appeal, the defendants renew these two claims. They maintain that the trial court improperly (1) concluded that the plaintiff was not "transacting business" within the meaning of General Statues § 33-920 (a), and (2) found that the defendants failed to prove the premises were untenantable and unfit for occupancy. We are not persuaded.

I

We first address the defendants' claim that the trial court improperly decided that the plaintiff was not transacting business within the meaning of § 33-920 (a). The defendants argue that the plaintiff, having failed to register in this state, was not entitled to initiate the present litigation because its activity of subleasing the commercial property was sufficient to constitute "transacting business" within the meaning of § 33-920 (a). Specifically, the defendants contend that the plaintiff

[3] General Statutes § 33-920 (a) provides in relevant part: "A foreign corporation, other than an insurance, surety or indemnity company, may not transact business in this state until it obtains a certificate of authority from the Secretary of the State. . . ."

[4] The court also concluded that the civil case pending between the parties did not bar the plaintiff's action because a summary process action is an expedited proceeding, which cannot be dismissed solely on the basis of the prior pending action doctrine.

was "transacting business" because the sublease (1) required the defendants to pay the plaintiff $3600 each month, for a total of $43,200 per year, (2) obligated the plaintiff to maintain and repair the heating system, air conditioning and roof on the premises and (3) resulted in regular and repeated business contacts in this state between the plaintiff and the defendants and the owner of the premises.[5]

Section 33-920 (a) provides in relevant part: "A foreign corporation . . . may not transact business in this state until it obtains a certificate of authority from the Secretary of the State. . . ." A foreign corporation that transacts business in violation of § 33-920 is subject to the penalties set forth in General Statutes § 33-921, which provides in relevant part: "A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority. . . ."

It is well established that "the question of whether a foreign corporation is transacting business so as to require a certificate of authority must be determined on the complete factual picture presented in each case, and that the corporation's activities must be more substantial than those which would suffice to subject it to service of process." *Sawyer Savings Bank* v. *American Trading Co.*, 176 Conn. 185, 190, 405 A.2d 635 (1978). The "situs of the contract, the presence of corporate offices and agents in Connecticut, and the extent of the

---

[5] In their brief, the defendants also appear to argue that by virtue of entering into a lease with the owner and operating an Indian Motorcycle franchise, the plaintiff conducted business within the state. At oral argument, however, the defendants explicitly conceded that, at the time the sublease was executed, all franchise operations had ceased and that the plaintiff's only obligation under the lease was the payment of rent to the owner and that obligation alone does not amount to transacting business within the meaning of the governing statutes.

business activities in Connecticut" have been identified as relevant factors in resolving this question. Id. In the ordinary course of events, therefore, our review of the trial court's determination would be limited to an inquiry into whether the court's findings were clearly erroneous. See *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 406, 411, 867 A.2d 841 (2005).

In rejecting the defendants' first special defense, however, the court did not make any factual findings. It merely stated: "[This] issue was raised by the defendants' motion to dismiss. The motion to dismiss was denied because the activities that the plaintiff is engaged in vis-a-vis the defendants do not amount to 'conducting business' within the meaning of § 33-[920 (a)]." The court failed to articulate the factual basis for its conclusion, and the defendants failed to move for articulation.[6]

The record before us, therefore, is inadequate for appellate review, and, accordingly, we decline to address the merits of the defendants' claim. "As is always the case, the [appellant] . . . bear[s] the burden of providing a reviewing court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . . In the absence of any such attempts, we decline to review this issue. . . . [A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis

---

[6] Significantly, the motion to dismiss referenced by the trial court in its memorandum of decision was filed by the defendants in the separate action to collect rent. Neither the motion nor the trial court's decision, therefore, is part of the record in this case.

upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Grimm v. Grimm*, 276 Conn. 377, 388–89, 886 A.2d 391 (2005).

## II

We next address the defendants' claim that the trial court improperly found that they failed to prove that the premises were untenantable and unfit for occupancy. Under paragraph eleven of the original lease, incorporated by reference into the sublease, "should the premises be rendered *untenantable and unfit for occupancy*, but yet be repairable within ninety days from the date of damage, the Landlord may enter and make repairs with reasonable speed, and the rent shall not accrue after the date of damage or while repairs are being made but shall recommence immediately after the repairs are completed." (Emphasis added.)

The defendants argue that various roof and electrical problems and code violations rendered the premises unfit for the use for which they were intended, an upscale antiques shop, thereby obviating the obligation to pay the rent due under the sublease. Specifically, they argue that they have been (1) unable to display, store and refurbish their inventory for fear that they would suffer irreparable water damage from the leaking roof and picture window and (2) prevented from using the basement level of the premises as a showroom due to the unsafe conditions created by the fire code violations. We are not persuaded.

Before addressing the merits of the defendants' claim, we set forth the applicable standard of review. The issue raised by the defendants concerns the trial court's role as fact finder. See *Heritage Square, LLC* v. *Eoanou*, 61 Conn. App. 329, 332, 764 A.2d 199 (2001). It is well established that "[o]ur review of questions of fact is limited to the determination of whether the findings

were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Evans* v. *Weissberg*, 87 Conn. App. 180, 182, 866 A.2d 667 (2005).

Our review of the well reasoned decision of the trial court persuades us that the defendants' argument for reversal of the court's judgment cannot be sustained. In support of its finding that the defendants failed to prove that the premises are untenantable and unfit for occupancy, the court stated: "The defendants have demonstrated minor problems with the roof after it was replaced in early January, 2004, and they have established minor problems with the picture window. Based on the evidence, these problems do not render the premises untenantable.

"The defendants contend that because they are unable to use the basement floor, the value of the leased premise is reduced to one half. Richard Tarro testified that it was [the defendants'] intent to continue the showroom into the basement floor. The sublease is silent regarding the intended use of the basement floor as part of the showroom space for the defendants' business.

"The defendants' past use of the basement floor during the tenancy is inconsistent with the present contention regarding the use of the basement floor. Richard Tarro testified that the basement floor was being used for the storage of furniture since December, 2003. [The town fire marshal Gary ] Santoro testified that the defen-

dants were using the basement floor as a 'storage area' for the refinishing of furniture.

"The defendants do not allege constructive eviction and the defendants have not vacated the premises. The credible evidence establishes that the defendants have been open for business and have conducted business at the premises since mid-January, 2004."

We are convinced, therefore, that there was a reasonable basis on which the trial court could find that the defendants failed to prove that the premises were untenantable and unfit for occupancy. In light of this finding, the defendants cannot prevail.

The judgment is affirmed.

In this opinion the other judges concurred.