STORNAWAYE PROPERTIES, INC. *v.*
JEREMIAH J. O'BRIEN ET AL.
(AC 26460)

Lavery, C. J., and McLachlan and Peters, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 1, 2005—officially released March 7, 2006

*Paul J. Hyams*, pro hac vice, with whom were *Richard Levy* and, on the brief, *Douglas M. Evans*, for the appellant (substitute plaintiff).

*Brian E. Kaligian*, for the appellee (named defendant).

*Timothy D. Miltenberger*, for the appellee (defendant Marguerite E. O'Brien).

*Opinion*

McLACHLAN, J. The substitute plaintiff, New Falls Corporation,[1] appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants, Jeremiah J. O'Brien and Marguerite E.

---

[1] The substitute plaintiff replaced the named plaintiff, Stornawaye Properties, Inc., during trial. We refer in this opinion to the substitute plaintiff as the plaintiff.

O'Brien. The plaintiff has obtained a judgment against Jeremiah O'Brien that remains unpaid. It claims that the court improperly refused to impose a constructive trust on certain assets of Marguerite O'Brien that allegedly are owned equitably and beneficially by Jeremiah O'Brien. We disagree and affirm the judgment of the trial court.

The following evidence was presented to the court. In the 1980s, Marguerite O'Brien worked as an investment banking saleswoman, and Jeremiah O'Brien worked as a salesman for a large securities brokerage firm in New York. They both earned substantial salaries. On December 28, 1985, the defendants were married, and in 1987 they purchased a cooperative apartment in Manhattan. During their period of ownership, Marguerite O'Brien paid for substantial renovations to the property. She retained approximately $200,000 when the apartment was sold in 1988, which represented the equity in the property.

Between 1983 and 1986, before moving to Connecticut, Jeremiah O'Brien was a money investor in a number of real estate transactions with his brother, Kevin C. O'Brien. All of the real estate was in Hartford. Jeremiah O'Brien provided the funds, and his brother managed the properties. In late 1988, Jeremiah O'Brien left his employment to become involved on a full-time basis with his brother's real estate business, O'Brien Realty, which managed properties and provided brokerage services. In addition to being an investor, Jeremiah O'Brien wanted to learn the business and participate in the purchase of and renovations to the properties. O'Brien Properties, Inc., a corporation owned by the brothers, was created in 1988 to purchase several apartment complexes in the greater Hartford area. O'Brien Properties, Inc., owned the properties, and O'Brien Realty managed them.

In September, 1989, the defendants purchased their home in Avon, as joint tenants, for $547,000. A mortgage of $412,000 was placed on the property at the time of purchase. There is a discrepancy in the evidence as to the cash amount contributed by each defendant toward the down payment. Shortly after the purchase, Marguerite O'Brien contributed approximately $200,000 toward the renovation of the house. Because of her substantial investment, the defendants decided that she should hold title in her name alone. Her husband conveyed his interest in the Avon property to her in June, 1990. When the defendants refinanced their mortgage loan in 1992, Marguerite O'Brien conveyed title to the house to herself and her husband. On the same day, after the execution of the loan documents, Jeremiah O'Brien transferred his interest back to his wife.[2] She was the record owner of the Avon property at the time of trial.

The real estate market in the Hartford area sharply declined in the early 1990s. O'Brien Properties, Inc., lost all of the properties it acquired in the late 1980s through foreclosure proceedings. The plaintiff's judgment against Jeremiah O'Brien, which the plaintiff now seeks to satisfy with assets held by his wife, involved one of those properties. O'Brien Properties, Inc., purchased two apartment buildings located on Grafton Street in Hartford with moneys loaned by The Bank of Hartford. The note was secured by a mortgage on the Grafton Street property and was personally guaranteed by the O'Brien brothers. Although the original balloon maturity date was October 1, 1991, the bank extended that date to October 1, 1993. Subsequently, the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver for The Bank of Hartford. When O'Brien Properties, Inc., and the O'Brien brothers failed to pay

---

[2] The first count of the operative complaint alleged that Jeremiah O'Brien's transfer of the home to his wife was a fraudulent conveyance. The plaintiff has abandoned that claim.

the note, the FDIC commenced an action in 1996, seeking, inter alia, a foreclosure of the mortgage. In June, 1997, a deficiency judgment was rendered against O'Brien Properties, Inc., and Jeremiah O'Brien in the amount of $717,160.36.[3] The FDIC assigned the deficiency judgment to Stornawaye Properties, Inc. (Stornawaye), in December, 1998. The present action was commenced by Stornawaye against the defendants in 2001. Stornawaye assigned the deficiency judgment to the plaintiff in February, 2004.

In addition to Marguerite O'Brien's interest in the Avon property, the evidence indicated that she acquired interests in four apartment buildings in the 1990s. The complexes, purchased between 1993 and 1997, were known as Eastbrook Towers in East Hartford, the Congress Street Apartments in Hartford, Westbrook Towers in West Haven and the Regency Apartments in New Britain.[4] Kevin O'Brien discovered those properties, which were being sold at prices that Marguerite O'Brien and the other investors in the properties believed to be below market value. The properties were purchased, in part, with purchase money mortgages and, in part, by cash contributions made by Marguerite O'Brien and the investors. She and the investors provided the capital; Kevin O'Brien provided the expertise and renovated and managed the properties. Jeremiah O'Brien obtained the investors, who were his former coworkers and acquaintances.

Although the amount of Marguerite O'Brien's investments varied from property to property, the agreements between Marguerite O'Brien and the investors essentially were identical as to the return of the capital

[3] The deficiency judgment was not rendered against Kevin O'Brien because he filed a petition in bankruptcy, and his debts were discharged in 1996.

[4] The entities formed to purchase those properties were Eastbrook Limited Partnership, Congress II, LLC, Westbrook Towers, LLC, and 55 Spring Street, LLC, respectively.

invested and the distribution of profits. After the investors, including Marguerite O'Brien, received the return of their investments, Marguerite O'Brien would receive 50 percent of the net earnings as the general partner or managing member (manager's return), and all of the investors received the remaining 50 percent pro rata. The agreement for the Regency Apartments was slightly different because both Kevin O'Brien and Marguerite O'Brien were "originating members"[5] and, therefore, shared equally in the 50 percent manager's return.

The plaintiff, in order to satisfy its judgment against Jeremiah O'Brien, sought to have a constructive trust imposed on Marguerite O'Brien's interests in the four apartment complexes acquired in the 1990s and on one half of her interest in the Avon property. The claim is that the property interests are equitably and beneficially owned by Jeremiah O'Brien, but held in his wife's name, and that equity and good conscience require that they be subject to the rights of the plaintiff as Jeremiah O'Brien's creditor.

"A court's determination of whether to impose a constructive trust must stand unless it is clearly erroneous or involves an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Menard* v. *Gaskell*, 92 Conn. App. 551, 555, 885 A.2d 1254 (2005).

"A constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable

---

[5] According to the operating agreement of 55 Spring Street, LLC, Kevin O'Brien is described as the sole managing member, and Marguerite O'Brien is identified, along with Kevin O'Brien, as an "originating member."

conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form . . . [or] when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." (Internal quotation marks omitted.) *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 288, 794 A.2d 1029 (2002). "The issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched." Id., 295.

The plaintiff claims that the defendants are unjustly enriched because Marguerite O'Brien receives a 50 percent manager's return and a pro rata share of the remaining 50 percent of the net earnings. As previously noted, the partnership and limited liability company agreements provided that after all of the investors were repaid the amount of their capital contributions, the profits were to be distributed 50 percent to Marguerite O'Brien or, in the case of the Regency Apartments, 25 percent to her and 25 percent to Kevin O'Brien, and the remaining 50 percent was to be distributed pro rata to all of the investors in accordance with the amount of their investments. The plaintiff argues that the court should have imposed a constructive trust on her manager's return and on her partnership and membership interests in the apartment owning entities. In support of that argument, the plaintiff claims that the court (1) ignored the evidence that the O'Brien brothers were the only individuals involved in the day-to-day management of the apartment complexes, (2) credited certain testimony regarding Marguerite O'Brien's participation

in key decision-making matters without any supporting documentation, (3) credited certain testimony that Marguerite O'Brien personally guaranteed loans and provided other important information to lending institutions without any supporting documentation and (4) improperly found that Marguerite O'Brien acquired the interests in the four apartment complexes with her own funds.

The plaintiff also claims that the defendants are unjustly enriched because Marguerite O'Brien holds title to the family home in Avon. The plaintiff, noting that the defendants purchased the property as joint tenants in 1989, claims that Jeremiah O'Brien subsequently transferred his interest to his wife without consideration for the purpose of avoiding his creditors. The plaintiff argues that the court, in refusing to impose a constructive trust on one half of Marguerite O'Brien's interest in the Avon property, improperly credited the testimony that Marguerite O'Brien paid a substantial portion of the purchase price and paid for substantial renovations to the home.

The plaintiff is challenging the court's findings of fact. With respect to Marguerite O'Brien's entitlement to the manager's return, the court specifically found that she "participated in the decisions as to whether or not to sell the properties" and that "she was personally liable for the debts of the partnership." Moreover, the court found that "Marguerite O'Brien signed the loan documents for all of the properties and guaranteed loans for each of the properties, creating a total potential personal liability of $1.3 million. When the properties needed additional moneys for renovations, Marguerite O'Brien provided it. When the income from a property was insufficient to pay all of the investors the promised rate of return, Marguerite O'Brien deferred her own distribution."

With respect to Marguerite O'Brien's investments in the properties, the court found that she invested $248,000 as a limited partner and $2000 as a general partner in Eastbrook Towers, $100,000 for her interest in the Congress Apartments, $145,000 for her interest in Westbrook Towers and $275,000 for her interest in the Regency Apartments. The court found that "Marguerite O'Brien did contribute substantial sums to purchase her interests in these entities, and Jeremiah O'Brien contributed no moneys."

With respect to Marguerite O'Brien's interest in the family home in Avon, the court found that although there was a conflict in the evidence as to the amount of cash that the defendants contributed to purchase the home, the evidence was clear that she paid a substantial portion of the purchase price and all of the $200,000 needed to renovate the property. Further, the court noted that Jeremiah O'Brien transferred his interest to his wife in 1990, at the time she paid for the renovations, which was several years before the FDIC obtained the judgment against Jeremiah O'Brien that was subsequently assigned to the plaintiff.

On the basis of those findings of fact, the court concluded that a constructive trust should not be imposed on Marguerite O'Brien's interests in the apartment complexes because "Marguerite O'Brien is the rightful owner of the interest in these entities by virtue of her cash contributions, her services and her personal assumption of liabilities," and because the "plaintiff failed to prove the elements of a constructive trust with respect to [the] Avon property." A court's findings of fact are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record. *Cavolick* v. *DeSimone*, 88 Conn. App. 638, 646, 870 A.2d 1147, cert. denied, 274 Conn. 906, 876 A.2d 1198 (2005). "A finding of fact is clearly erroneous when there is no evidence in the record to support it

. . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Additionally, to the extent that the court's findings of fact are dependent on its assessment of the credibility of witnesses, we will not second-guess those findings. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Citation omitted; internal quotation marks omitted.) *Menard* v. *Gaskell*, supra, 92 Conn. App. 556–57.

Because the court's findings of fact have ample support in the evidence, we conclude that those findings are not clearly erroneous. Except for the Regency Apartments, in which Kevin O'Brien also invested $275,000, the testimony of all three O'Briens indicated that Marguerite O'Brien alone invested the aforementioned funds to acquire those apartment complexes in the 1990s. There was no testimony or documentary evidence presented to the court that Jeremiah O'Brien contributed any moneys when those properties were purchased or renovated. To the contrary, the testimony indicated that he lost all of his savings and investments when the Hartford real estate market declined in the early 1990s. The record indicates that he found investors to participate in those real estate transactions; the record does not provide any support for the plaintiff's contention that he managed the properties and was entitled to the manager's return. All of the testimony indicated that Marguerite O'Brien made key decisions, assumed personal liability for loans and took the risks associated with the ownership of those distressed properties.

The plaintiff argues that Marguerite O'Brien did not have the funds to invest in the properties and that the testimony at trial provided by all three O'Briens is not supported by any written documentation. According to the plaintiff, their testimony is not to be believed because it was all self-serving. There is no requirement that oral testimony be supported by written documentation in order to be credible, and the plaintiff has provided no authority to support that position. The testimony was extensive and consistent as to the amounts invested by Marguerite O'Brien in the apartment complexes. Although the plaintiff claims that Marguerite O'Brien did not have the funds to invest, there is evidence in the record that she had considerable cash assets at the time of her marriage, that she retained almost $200,000 from the sale of the Manhattan apartment in 1988, that she earned a substantial salary and bonus compensation from Citicorp Securities in 1986 and 1987, that she cashed out her savings incentive program at Citicorp Securities sometime around 1988 and that she received interest income on a yearly basis. Significantly, nothing in the record indicates that the funds for the investments could have come from her husband. He had no assets and received a limited income from O'Brien Realty for services performed. The plaintiff's conclusory statement that Marguerite O'Brien could not have had the moneys to invest, relying on an unsigned financial statement purportedly given by the defendants to a lending institution in 1990, was not persuasive at the time of trial and is not persuasive on appeal.

With respect to the family home in Avon, the plaintiff argues that the court based its decision solely on the testimony that Marguerite O'Brien contributed a substantial portion of the purchase price and that she paid all of the $200,000 needed for the renovations to the home. The plaintiff does not claim that the record is

devoid of such evidence. The plaintiff claims, instead, that the court's findings with respect to the Avon property are clearly erroneous because they were based on the self-serving testimony of the defendants, without any support from documentary evidence. Again, there is no requirement that oral testimony be supported by written documentation in order to be found credible by the trier of fact.

The court credited the testimony of the defendants. We will not retry the case. As indicated, there is ample evidence in the record to support the court's findings of fact. The court's findings of fact provided the basis for its ultimate conclusion that the requirements for a constructive trust were not established. On the basis of our review of the record and the court's memorandum of decision, we conclude that the court acted well within its discretion in refusing to impose a constructive trust on Marguerite O'Brien's assets in order for the plaintiff to satisfy its judgment against her husband.

The judgment is affirmed.

In this opinion the other judges concurred.