PHILIP SULLIVAN ET AL. *v.* MARYANNE DELISA, TRUSTEE OF THE MARY E. CROWELL FAMILY HOME TRUST, ET AL.
(AC 25730)

Schaller, McLachlan and Stoughton, Js.

606

Argued January 10—officially released June 5, 2007

*Philip Sullivan*, pro se, and *Charlotte Sullivan*, pro se, the appellants (plaintiffs).

*Edward G. McAnaney*, for the appellees (defendants).

*Opinion*

STOUGHTON, J. The pro se plaintiffs, Philip Sullivan and Charlotte Sullivan, appeal from the judgment in favor of the defendants, Maryanne Delisa and Kathryn Hyland, trustees of the Mary E. Crowell family home trust, and Mary E. Crowell,[1] settlor of the Mary E. Crowell family home trust, rendered after a trial to the court, on an entry and detainer action and related claims. The plaintiffs claim that the court improperly determined that (1) they were not in possession of the premises at issue on September 7, 2000, pursuant to General Statutes § 47a-43 et seq., the entry and detainer statutes, (2) they were not tenants of the defendants on September 7, 2000, (3) they were not entitled to the equitable remedy of a constructive trust imposed on the disputed premises, (4) the defendants did not take the plaintiffs' personal property in violation of General Statutes § 52-564, the civil theft statute, and (5) the defendants did not breach a stipulation providing the plaintiffs access to their personal property located on the premises.[2] We affirm the judgment of the trial court.

The court found the following facts relevant to the plaintiffs' appeal. Philip Sullivan is the son of the defendant Crowell. Sullivan and his wife, Charlotte Sullivan, moved into Crowell's home in Farmington, on a temporary basis, on September 1, 1970. The court stated in

---

[1] Following trial, but before judgment was rendered, the defendant Mary E. Crowell died. In this opinion, we refer to her as a defendant.

[2] The plaintiffs also challenge the court's determination that the defendants were not liable to the plaintiffs pursuant to an intentional infliction of emotional distress theory. The court, in rejecting the plaintiffs' claim, found that the plaintiffs failed to prove that the defendants intended to harm the plaintiffs. See *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). The plaintiffs have failed to provide reasons supporting their bare assertion that the defendants' actions were "calculated to cause and did cause plaintiffs overwhelming mental distress" and, thus, do not provide reasons supporting their claim that the court's determination was improper. Therefore, we decline to review this claim. See *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130, 884 A.2d 7 (2005).

its memorandum of decision: "The plaintiffs intended to stay for a few months but ended up staying for thirty years." The plaintiffs primarily used the master bedroom and the family room, but their possession of these rooms was not exclusive, and Crowell and others had access to them. The plaintiffs brought items of their own into the home while there, and Philip Sullivan parked an old bulldozer he owned in the yard, where it resided for about fifteen years. Over the course of the thirty year occupancy, the plaintiffs made a few repairs and improvements to the premises. Crowell paid for the materials, though the plaintiffs appear to have supplied the labor. The plaintiffs made periodic payments to Crowell in order to assist with household expenses, as did other family members when they stayed in the house.

On June 27, 2000, Delisa, a daughter of Crowell and sister of Philip Sullivan, told the plaintiffs that Crowell had decided to move to a retirement center. She further informed the plaintiffs that they could purchase the premises if they wanted to do so. Otherwise, it would be sold. Philip Sullivan testified that the price offered by the defendants was below the fair market value. The plaintiffs declined the offer on July 6, 2000. A dispute erupted between the plaintiffs and Delisa and Hyland, who is also a sister of Philip Sullivan. The argument between the parties resumed the following day, this time joined by Crowell. The defendants informed the plaintiffs that they must move out of the premises. On July 7, 2000, the plaintiffs left the premises and temporarily resided with other relatives. They left some of their personal belongings at the premises, including Philip Sullivan's bulldozer. After staying at several locations, the plaintiffs entered into a lease for an apartment in Newington on August 1, 2000, where they still lived at the time of the trial. Although the plaintiffs went to the premises on several occasions after July 7, 2000,

they never again stayed there. On July 20, 2000, Crowell instructed the plaintiffs to remove their personal property by August 6, 2000, because she had rented the premises. The plaintiffs refused to remove their property. On July 31, 2000, Crowell again told the plaintiffs to remove their personal belongings and informed them that she intended to change the locks after August 6, 2000. On September 7, 2000, the plaintiffs returned to the premises and found that the locks had indeed been changed. Most of the plaintiffs' personal belongings had been removed to the garage, except for Philip Sullivan's bulldozer, which had been sold at Crowell's direction. The plaintiffs brought a five count complaint against the defendants on September 18, 2000. They later amended their complaint and added an additional three counts. The trial court rendered judgment in favor of the defendants on all counts on September 14, 2004.

"It is well established that [o]ur review of questions of fact is limited to the determination of whether the findings were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Wagner & Wagner Auto Sales, Inc.* v. *Tarro*, 93 Conn. App. 376, 383–84, 889 A.2d 875, cert. granted on other grounds, 277 Conn. 932, 896 A.2d 103 (2006).

I

The plaintiffs first claim that the court improperly determined that they did not have actual possession of

the premises on September 7, 2000, as required to prevail on a forcible entry and detainer claim brought pursuant to § 47a-43 et seq.[3] Specifically, they argue that the court used an incorrect legal standard to determine that they had "abandoned" the premises and reached a conclusion that was against the weight of the evidence.[4]

A determination of actual possession pursuant to the entry and detainer statutes; § 47a-43 et seq.; is a determination of fact, and, thus, our review is limited to determining whether the court's finding was clearly erroneous. *Fleming* v. *Bridgeport*, 92 Conn. App. 400, 404, 886 A.2d 1220 (2005), cert. granted on other grounds, 277 Conn. 922, 895 A.2d 795 (2006).

---

[3] General Statutes § 47a-43 (a) provides in relevant part: "When any person . . . having made a peaceable entry [into any land, tenement, or dwelling unit], without the consent of the actual possessor, holds and detains the same with force and strong hand . . . or . . . when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."

General Statutes § 47a-45a (a) provides in relevant part: "If it is found (1) that a forcible entry has been made into the . . . dwelling unit, or (2) that the same [is] detained with force and strong hand, or . . . (4) that the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, as complained of, the judge shall render judgment that the complainant be restored to, and reseized of, the premises or that the personal property removed or detained be returned to the complainant, and shall award a writ of restitution accordingly. . . ."

[4] The plaintiffs additionally argue that the court relied on evidence that was not in the record. Specifically, they note that the court stated in its memorandum of decision: "After the argument, the plaintiffs indicated to Crowell that they were moving from the property. . . . The court credits the testimony of Crowell that the plaintiffs indicated that they were moving from the property." After reviewing the record, we conclude that the plaintiffs are correct in their observation that Crowell did not testify that the plaintiffs told her they were moving out of the house. Instead, the testimony was provided by Hyland during Philip Sullivan's redirect examination of her on July 25, 2003. Any mistake the court made in misstating the source of the testimony was harmless and does not justify a new trial.

"A plaintiff suing under the forcible entry and detainer statute must prove his actual possession of the land or property from which he claims to have been dispossessed." *Communiter Break Co.* v. *Scinto,* 196 Conn. 390, 393, 493 A.2d 182 (1985). The traditional rule in Connecticut is that the proper inquiry is whether the plaintiff exercised actual possession of the premises in question and that the legal right of the parties to possess the premises is not dispositive. *Bliss* v. *Bange,* 6 Conn. 78, 80 (1826) ("[t]he statute designedly excludes the examination and decision of the question of title"); *Carrier* v. *Carrier,* 85 Conn. 203, 206–207, 82 A. 187 (1912) ("[t]he statute against forcible entry and detainer . . . makes it unlawful for the owner, or one having the right of possession of land, to forcibly and with strong hand enter and dispossess a person who has the actual, peaceable possession of such land, although the latter has no right of possession" [citation omitted]); *Fleming* v. *Bridgeport,* supra, 92 Conn. App. 404 n.5 ("[w]e note that an illegal possessor may be in actual possession of property and may commence an action in entry and detainer"). "Generally, the inquiry [of actual possession] is whether the individual has exercised the dominion and control that owners of like property usually exercise. . . . [I]t is not necessary that there be a continuous personal presence on the land by the person maintaining the action. There, however, must be exercised at least some actual physical control, with the intent and apparent purpose of asserting dominion." (Citations omitted.) *Communiter Break Co.* v. *Scinto,* supra, 394.

First, the plaintiffs argue that the court used an improper legal standard to determine that they had "abandoned" the premises by September 7, 2000. They argue that the facts found by the court do not satisfy the statutory definition of abandonment pursuant to General Statutes § 47a-11b or pursuant to case law. The

plaintiffs cite *Daddona* v. *Liberty Mobile Homes Sales, Inc.*, 209 Conn. 243, 550 A.2d 1061 (1988); *Berlingo* v. *Sterling Ocean House, Inc.*, 203 Conn. 103, 523 A.2d 888 (1987); *Communiter Break Co.* v. *Scinto*, supra, 196 Conn. 390; and *McManus* v. *Roggi*, 78 Conn. App. 288, 826 A.2d 1275 (2003).

The plaintiffs' argument rests on a faulty premise. As stated previously, the *plaintiffs*, under the entry and detainer statute, had the burden to prove actual possession of the premises at the relevant time. The abandonment statute cited by the plaintiffs governs circumstances when the *defendant* bears the burden to prove abandonment of some legal right, specifically, when a landlord defendant must prove, as a special defense, that a former tenant has abandoned a tenancy held pursuant to a valid lease. See, e.g., *Calder* v. *Lufkin*, Superior Court, judicial district of New London at Norwich, Housing Session, Docket No. 14872 (February 7, 2006). Two of the cases cited by the plaintiff are similarly inapplicable because they involve the abandonment of a legal right. In *McManus* v. *Roggi*, supra, 78 Conn. App. 288, and *Daddona* v. *Liberty Mobile Homes Sales, Inc.*, supra, 209 Conn. 243, the defendants had the burden to demonstrate that the plaintiffs had abandoned their legal rights to an easement and to ownership of a mobile home, respectively. It is not clear for what proposition the plaintiffs cite *Berlingo* v. *Sterling Ocean House, Inc.*, supra, 203 Conn. 103, and they have provided no analysis in support thereof.

*Communiter Break Co.* is also not dispositive. In that case, our Supreme Court determined that it was not clearly erroneous for a trial court to consider the presence of personal property maintained on the premises when determining whether the plaintiff had actual possession of the premises, even when the plaintiff did not have a continuous personal presence on the premises. *Communiter Break Co.* v. *Scinto*, supra, 196 Conn. 394.

The court did not hold that the presence of such personal property, alone, was sufficient to show actual possession. Rather, it determined whether the trial court properly found that the plaintiff exercised sufficient dominion and control over the property to constitute actual possession.

We conclude that the court did not use an incorrect legal standard in evaluating, and ultimately rejecting, the plaintiffs' claim that they had actual possession of the premises on September 7, 2000.

The plaintiffs also argue that the court's determination that they did not actually possess the property was against the weight of the evidence. Specifically, they note that they had left some personal items behind at the premises after they departed on July 7, 2000, that they departed from the house only because they felt threatened while there and that they intended to return at some later point. The presence of personal property is not itself dispositive. The court had the discretion not to credit the plaintiffs' reasons for their prolonged absence from the premises. The court had before it evidence that the plaintiffs had entered into a long-term lease for an apartment in another town on August 1, 2000. The court also heard testimony that the plaintiffs had not stayed at the premises since July 7, 2000. In sum, the court found that on July 7, 2000, the plaintiffs said they were moving, did so and soon resided in their own apartment in Newington. From this the court reasonably could conclude that the defendants did not have actual possession of the premises on September 7, 2000.

II

The plaintiffs next claim that the court improperly found that the parties were not in a landlord and tenant relationship on September 7, 2000, and so concluded that the plaintiffs were not entitled to the protections

accorded to tenants under General Statutes § 47a-16. The plaintiffs argue that it was inconsistent for the court to determine that the plaintiffs were lawful possessors of the premises on July 7, 2000, but not tenants of the defendants on September 7, 2000, and that its determination that there was no landlord-tenant relationship was against the weight of the evidence.[5] We disagree.

The plaintiffs first argue that the court's decision is inconsistent. The plaintiffs, however, reach this conclusion because they misinterpret the meaning of the court's finding that they were lawful possessors of the property until July 7, 2000. The court found, while evaluating the plaintiffs' entry and detainer claim, that the plaintiffs were "possessors" of the property as that term is used in § 47a-43 et seq. As discussed previously, that statute required the plaintiffs to prove that they were in "actual possession" of the premises. The court's finding that the plaintiffs were lawful possessors on July 7, 2000, was a determination that they were in "actual possession," pursuant to § 47a-43 et seq. The existence of a tenancy, in contrast, depends on the intent of the parties to deliver the right of possession to the alleged tenant. 1 Restatement (Second) Property, Landlord and Tenant § 1.2, comment (a), pp. 9–10 (1977). Thus, there is nothing inconsistent, as such, about the court's determining that the plaintiffs had actual possession of the premises, but not a legal right to possess the premises.

The plaintiffs next argue that the court's determination that they were not tenants of the defendants on

---

[5] The plaintiffs also allude to the contracts clause of the United States constitution; U.S. Const., art. I, § 10; stating that the court's determination that there was no tenancy violates that clause. The plaintiffs have not provided the legal basis for this assertion, however, and, therefore, we decline to afford it review.

September 7, 2000, was against the weight of the evidence.[6] In order for a tenancy to form, the parties must have agreed, at least implicitly, that the alleged tenant should have a right to possess the property. Id., § 1.2, p. 9. Possession of property typically includes, among other things, the power to exclude others from entering the premises. Id.[7] Because the intent of parties making an agreement, particularly in the absence of a memorialization of the agreement, is a question of fact, our review is limited to determining whether the court's conclusion was clearly erroneous.

The court determined that the plaintiffs did not occupy the premises pursuant to an agreement whereby the parties intended that the plaintiffs should have the right to exercise a power of exclusion against the defendants. Thus, it concluded, there was no tenancy.

As stated previously, the court reasonably determined that the parties were not in actual possession of the property. The court also considered testimony from Crowell that she did not intend to create a tenancy, nor did she believe that the plaintiffs had any right to exclude her from the rooms they claimed to have held. Crowell testified that she occasionally would enter the master bedroom without first obtaining the permission of the plaintiffs. From this, it was not clearly erroneous for the court to conclude that Crowell did not intend that the plaintiffs should have the right to exert the power of exclusion and, thus, the right to possession, on September 7, 2000. Therefore, we conclude that the court did not abuse its discretion in determining that

---

[6] The plaintiffs also appear to invite us to consider whether they were tenants of the defendants on July 7, 2000. Their complaint, however, is limited to September 7, 2000, and, therefore, we limit our consideration to the relationship of the parties on that date.

[7] General Statutes § 47a-1 (*l*) defines a tenant as "the lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others or as is otherwise defined by law."

there was no landlord-tenant relationship between the parties.[8]

## III

The plaintiffs next argue that the court improperly refused to impose a constructive trust on the premises for their benefit.[9] We conclude that the court's finding that there was no unjust enrichment to support such an award was not clearly erroneous and, therefore, that the court did not abuse its discretion in denying the relief sought.[10]

The imposition of a constructive trust is an equitable remedy, the granting of which is within the equitable discretion of the court. As such, the court's conclusion that no constructive trust should be imposed will be reversed only if the conclusion is an abuse of discretion.

[8] The plaintiffs also argue that the court improperly determined that the defendants were not liable pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., for locking the doors to the premises on September 7, 2000. The plaintiffs' sole argument as to their CUTPA allegation is that the court's determination that they were not tenants of the defendants on the relevant date was incorrect. Because we conclude that the court was correct that the plaintiffs were not tenants of the defendants on September 7, 2000, we agree with the court's determination of the CUTPA claim. We need not determine whether the claim would fail for other reasons.

[9] In regard to their requested remedies arising from alleged unjust enrichment, the plaintiffs challenge only the court's decision denying their request for a constructive trust; they do not challenge the court's denial of any request for monetary damages that they may have raised and so have waived any such argument.

[10] Because of our resolution of this claim, we need not address whether, even if there was unjust enrichment, the plaintiffs would be allowed to seek the imposition of a constructive trust grounded solely on a claim of lack of payment for improvements to the property. See Restatement, Restitution, Quasi Contracts and Constructive Trusts § 161, comment (a), p. 651 (1937) ("where a person makes improvements upon the land of another under circumstances which entitle him to restitution, he may have an equitable lien upon the land, but he cannot charge the owner of the land as constructive trustee of the land for him and compel the owner to transfer the land to him" [citation omitted]).

See *Stornawaye Properties, Inc.* v. *O'Brien*, 94 Conn. App. 170, 175, 891 A.2d 123 (2006).

"[A] constructive trust arises . . . against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . Moreover, the party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff." (Citations omitted; internal quotation marks omitted.) *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 113–14, 680 A.2d 1314 (1996). "The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 856, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); see also Restatement, Restitution, Quasi Contracts and Constructive Trusts § 160, comment (c), p. 642 (1937).

There is no question in this case that Crowell held good title to the premises. There is no allegation that she took title from the plaintiffs by fraud or otherwise. The plaintiffs allege that they made several repairs and improvements to the premises during the thirty years in which they resided there. By receiving the benefit of these repairs, the plaintiffs argue, the defendants were unjustly enriched. The court, to the contrary, determined that the repairs and improvements were gifts.

"Ordinarily, where services are rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for them; but where the services are rendered by members of a family, living

as one household, to each other, there will be no such implication from the mere rendition of services. . . . The reason for this exception to the ordinary rule is, that the household family relationship is presumed to abound in reciprocal acts of kindness and good-will, which tend to the mutual comfort and convenience of the members of the family, and are gratuitously performed . . . ." (Internal quotation marks omitted.) *Cotter* v. *Cotter*, 82 Conn. 331, 332, 73 A. 903 (1909); see *Davis* v. *Davis*, 128 Conn. 243, 247, 21 A.2d 393 (1941); *Daly* v. *Blinstrubas*, Superior Court, judicial district of Waterbury, Docket No. CV-99-0156584-S (December 12, 2002).

The plaintiffs argue that the improvements were made pursuant to an agreement between the parties and that as evidence of this agreement, Crowell promised them a three year future estate in the property after the termination of her own life estate. The plaintiffs do not allege that this agreement itself was ever memorialized and produced no writing containing such agreement. The court considered the testimony of Crowell that there was no agreement to pay for the repairs and improvements. It also considered the relationship between the parties, that of mother, son and daughter-in-law. Finally, the court noted that the plaintiffs had enjoyed use of the premises, at minimal cost, for more than thirty years. From this the court concluded that the defendants were not unjustly enriched by any improvements the plaintiffs may have made to the premises. We conclude that the court's determination that there was no unjust enrichment was not clearly erroneous, and, therefore, its denial of the plaintiffs' request to impose a constructive trust was not an abuse of its equitable discretion.

IV

The plaintiffs next claim that the court improperly determined that they were not entitled to treble damages under the civil theft statute, § 52-564. The plaintiffs

argue that they proved the elements necessary to demonstrate civil theft and that the court's determination to the contrary was an abuse of discretion.[11] We conclude that the defendants' taking of the plaintiffs' property was not "wrongful" and that the court properly determined that the plaintiffs should not recover treble damages.[12]

The underlying facts relevant to the plaintiffs' claim, as found by the court, are undisputed. Crowell had allowed Philip Sullivan to keep his bulldozer on her land for many years while the plaintiffs resided in Crowell's home. On July 20, 2000, after the plaintiffs had left the home, Crowell notified the plaintiffs that they must remove their personal belongings, including the bulldozer. The plaintiffs informed Crowell that they had no intention of removing any of their personal property. Crowell told the plaintiffs again on July 31, 2000, to remove their belongings. Some time prior to September 7, 2000, "Crowell gave the order to have the bulldozer removed from her property. Crowell admitted that she instructed Thomas Delisa to remove and sell the bulldozer. Crowell testified that she received $200 for the scrap value of the bulldozer and kept the money." The court found that the plaintiffs had a reasonable opportunity to remove the bulldozer from the land before Crowell ordered it sold.

The elements that the plaintiffs must prove to obtain treble damages under the civil theft statute, § 52-564,

[11] The plaintiffs also claimed at trial that they were entitled to treble damages because the defendants had moved the plaintiffs' other personal property into the garage. The plaintiffs do not clearly challenge the court's determination. In any case, the court properly held that the plaintiffs could not recover treble damages under the statute because they had not shown that the defendants intended to deprive them permanently of their other personal belongings. Cf. *State* v. *Calonico*, 256 Conn. 135, 162, 770 A.2d 454 (2001).

[12] Because we conclude that the defendants did not wrongfully take the bulldozer, we decline to review the plaintiffs' arguments regarding Crowell's intent at the time she ordered the bulldozer sold.

are the same as the elements required to prove larceny, pursuant to General Statutes § 53a-119. *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 770–71, 905 A.2d 623 (2006). The elements of civil theft are also largely the same as the elements to prove the tort of conversion, but theft "requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Internal quotation marks omitted.) Id., 771. "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . . It must be shown that (1) there was an intent to do the act complained of, (2) the act was done wrongfully, and (3) the act was committed against an owner." (Internal quotation marks omitted.) *State* v. *Spillane*, 54 Conn. App. 201, 217–18, 737 A.2d 479 (1999), rev'd on other grounds, 255 Conn. 746, 770 A.2d 898 (2001). "The essential cause of action is a wrongful exercise of dominion over personal property of another." *Semon* v. *Adams*, 79 Conn. 81, 82, 63 A. 661 (1906). It is not wrongful "to commit an act which would otherwise be . . . a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land . . . and the harm inflicted is not unreasonable as compared with the harm threatened." 1 Restatement (Second) Torts, § 260 (1), p. 490 (1965). The plaintiffs here stated explicitly that their claim was not for conversion.

Here, the defendants did not wrongfully take the bulldozer. After Crowell revoked her permission to keep the bulldozer on her property and allowed the plaintiffs a reasonable period to remove it, she was free to use reasonable means to remove it from her land herself. Her means were reasonable in light of the fact that she gave the plaintiffs sufficient notice that the bulldozer must be removed, the plaintiffs did not make any

attempt to remove the bulldozer and instead informed the defendants that they had no intention to remove it, and the plaintiffs knew that Crowell was preparing the house and land for sale to third parties. Therefore, we conclude that the court correctly determined that the plaintiffs were not entitled to treble damages.

V

Finally, the plaintiffs claim that the court improperly found that the defendants fulfilled their obligations under a stipulation entered into by the parties on September 27, 2000.[13] Specifically, the plaintiffs argue that the court misconstrued the stipulation, erroneously found that the defendants had complied with the stipulation prior to January 1, 2001, and improperly denied the plaintiffs' request to admit a letter into evidence.

"[A] stipulation of the parties is to be regarded and construed as a contract. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 555, 905 A.2d 1214, cert. denied, 280 Conn. 942, 943, 912 A.2d 479 (2006). We review the court's determination of the parties' intent, when the language of the stipulation is ambiguous, as we would review a factual conclusion. See *Krane* v. *Krane*, 99 Conn. App. 429, 431, 913 A.2d 1143 (2007). We will uphold the court's factual findings unless those findings are clearly erroneous. *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 98 Conn. App. 784, 789, 912 A.2d 513 (2006), cert. denied, 281 Conn. 914, 916 A.2d 55 (2007).

---

[13] The stipulation states in relevant part: "Plaintiffs shall be allowed access to garage and family room at their convenience, in order to assess the condition of their personal property; plaintiffs shall provide report of assessment to their attorney in order for it to be forwarded to defendants' attorney by October 11, 2000."

The plaintiffs first argue that the defendants violated the stipulation because the plaintiffs' personal property was packed so tightly into the garage that they were unable to assess the items individually without first removing at least some of the items from the garage. The plaintiffs appear to argue that the stipulation required the defendants to store the plaintiffs' property in such a way that the plaintiffs would be able to inspect each piece of their property without having to move any of the items prior to conducting the inspection. The stipulation does not state how tightly the property could be packed. The court's interpretation that the stipulation was satisfied as long as the plaintiffs had the ability to assess the items individually, even if such an assessment would require the plaintiffs to take some of the items out of the garage, was not clearly erroneous.

The plaintiffs next argue that the court's determination that they had access to their personal property before January 1, 2001, was clearly erroneous. The court found, as stated in an articulation of its July 8, 2004 opinion, that the plaintiffs had access to their belongings on September 28 and October 3, 2000. The court had before it photographs of the garage and the plaintiffs' personal property contained therein. The plaintiffs themselves introduced these photographs and claimed to have taken them on September 28, 2000. The photographs clearly show the garage door open and the property accessible. We agree with the court's finding that the plaintiffs had access to their property prior to January 1, 2001.

Finally, the plaintiffs assert that the court improperly denied their request to enter into evidence a letter describing a meeting one of the defendants allegedly had with an inspector from the criminal justice division of the office of the state's attorney. The plaintiffs do not offer any legal analysis supporting their assertion that the court's evidentiary determination was

improper. Therefore, we decline to review this argument. See *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130, 884 A.2d 7 (2005). We conclude that the court's determination that the defendants abided by the stipulation was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.